549 S.E.2d 699

The ESTATE OF Bobby J. ROBINSON, Deceased, by and Through His Widow, Tina Marie ROBINSON, and His Mother, Margaret Robinson, as Co–Administratrixes of the Estate, Plaintiffs Below, Appellants,

v.

RANDOLPH COUNTY COMMISSION, Paul Brady, Sheriff of Randolph County, Defendants Below, Appellees.

No. 28851.

Supreme Court of Appeals of West Virginia.

Submitted June 6, 2001.

Decided July 2, 2001.

Concurring Opinion of Justice Starcher July 10, 2001

Concurring Opinion of Justice Albright July 12, 2001.

Wesley W. Metheney, Paul T. Farrell, Jr., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, West Virginia, H. Gerard Kelley, Philippi, West Virginia, Attorneys for the Appellant.

Joseph A. Wallace, Elkins, West Virginia, Attorney for the Appellee.

PER CURIAM:

This appeal arises from a civil action brought by the Estate of Bobby J. Robinson, deceased, claiming that certain parties, including the decedent's criminal defense lawyer, failed to take appropriate protective action to prevent Mr. Robinson's jailhouse suicide. The Estate appeals an order dismissing the defendant criminal defense lawyer pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Observing that the circuit judge considered matters outside the pleading, we find the order must

be treated as one granting summary judgment. Because the circuit court failed to include appropriate findings of fact and conclusions of law in the order, we remand this case for the entry of such findings and conclusions.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The following statement of facts is essentially undisputed by the parties. On June 24, 1998, the decedent, Bobby J. Robinson, was incarcerated in the Randolph County Jail on charges of obstructing an officer, assault of a police officer, battery of a police officer, and twice violating a domestic violence restraining order that had been filed against him by his wife. Dwight Richard Hall, appellee herein and a defendant below, was appointed by the circuit court to represent Mr. Robinson in connection with the aforementioned charges.

On or about August 28, 1998, J. Burton Hunter, III, a lawyer representing Mr. Robinson in divorce proceedings, drafted a letter that was addressed to Mr. Hall and copied to, among others, the Sheriff of Randolph County and the Honorable John L. Henning, Judge. In the letter, Mr. Hunter advised its recipients that Mr. Robinson was despondent over his pending divorce and had expressed a desire to take his own life. The letter explained that Mr. Robinson was in need of medical assistance in connection with his "severe brain disorder" and "chronic depression." Mr. Hunter also asked Mr. Hall for assistance in getting help for Mr. Robinson. Finally, the letter stated its purpose to alert the circuit court of Mr. Robinson's "dangerous situation" and to ask the sheriff "to be alert to the possibility of suicide." Thereafter, on September 3, 1998, while still incarcerated in the county jail, Bobby Robinson committed suicide.

On August 9, 1999, this civil action was filed by the Estate of Bobby J. Robinson, deceased, by and through his widow, Tina Marie Robinson, and his mother, Margaret Robinson, as co-administratrixes of the Estate (hereinafter "the Estate"), against the

Randolph County Commission, Sheriff Paul Brady, and Mr. Hall. The complaint alleged that the defendants had knowledge of Mr. Robinson's mental condition and the risk that he would commit suicide, yet they failed to provide him with sufficient medical treatment and further failed to take appropriate actions to prevent his suicide.

On September 8, 1999, defendant Hall filed a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[1] A hearing on Mr. Hall's motion was scheduled for September 27th, 1999. The Estate filed its opposition to Mr. Hall's motion to dismiss, and attached the affidavit of Margaret Robinson thereto. Following the September 27th hearing, by order entered September 30, 1999, Judge Henning granted Mr. Hall's motion to dismiss, with prejudice. In the order, Judge Henning simply stated:

> The Court after considering the Defendant, Dwight Richard Hall's Motion to Dismiss and after hearing the arguments of Counsel, does find the Defendant Dwight Richard Hall to be immune from liability in this action pursuant to West Virginia law. In addition, the Court does find that there was no duty owed by the Defendant Dwight Richard Hall.

Thereafter, on October 6, 1999, the Estate filed a motion asking Judge Henning to recuse himself from the proceedings as he had been one of the recipients of the letter regarding Mr. Robinson's mental health and potential for suicide. The Estate alleged that, like the defendants in the action, Judge Henning failed to take any action in response to the letter. Consequently, the Estate asserted, Judge Henning's presence in the action would taint the proceedings and bias a jury unfairly against the plaintiffs. By subsequent letter dated October 12, 1999, Judge Henning stated that, although he did not agree with the Estate's reasoning, he would voluntarily recuse himself from the case. This Court, by administrative order entered October 21, 1999, then assigned Judge Andrew N. Frye, Jr., to preside over the case.

On November 18, 1999, the Randolph County Commission and Sheriff Paul Brady filed their motion to dismiss. Also on November 18, 1999, the Estate filed a document titled "MOTION TO RECONSIDER," asking Judge Frye to reverse Judge Henning's earlier order dismissing Dwight Hall. A hearing on the Estate's motion, and on the remaining defendants' motion to dismiss, was held on December 22, 1999. During the course of the hearing, counsel for the Estate acknowledged that its "MOTION TO RECONSIDER" would be treated as a motion pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure.[2] Restating the motion in the context of Rule 60(b), counsel asked that the order dismissing Mr. Hall be

---

1. Subsequent to the filing of the complaint, each defendant filed a notice of bona fide defense, which extended the time for filing an answer to thirty days. *See* W. Va. R. Civ. P., Rule 12(a).

2. W. Va. R. Civ. P. 60(b) states:

> *Mistakes: inadvertence; excusable neglect; unavoidable cause; newly discovered evidence; fraud, etc.*—On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; *or (6) any other reason justifying relief from the operation of the judgment.* The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. *A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.* This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant statutory relief in the same action to a defendant not served with a summons in that action, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, petitions for rehearing, bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

(Emphasis added).

reversed pursuant to subdivision (6) of the rule, which allows relief from a final judgment or order for "any other reason justifying relief from the operation of the judgment." At the conclusion of the hearing, Judge Frye indicated that he would take both motions, the Estate's Rule 60(b) motion and the remaining defendants' motion to dismiss, under advisement and render "a written answer in appropriate time." However, by subsequent order entered April 20, 2000, Judge Frye addressed only the defendants' motion to dismiss, granting the same.[3]

Thereafter, on August 16, 2000, the Estate filed a petition for appeal. In its petition, the Estate alleged numerous errors involving all three defendants. Prior to oral argument, however, the Estate settled with the County Commission and the Sheriff. Consequently, only issues involving Mr. Hall remained for appellate determination. On Friday, May 30, 2001, Mr. Hall filed in this Court a motion to dismiss asserting that the Estate's appeal was untimely.

## II.

### STANDARD OF REVIEW

■ Before discussing the appropriate standard for our review, we must address the posture in which this case is presented. The parties both treat this appeal as one arising from a dismissal pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. We disagree. We have long held that:

> "Only matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R.C.P., and *if matters outside the pleading are presented to the court and are not excluded by it,* the motion should be treated as one for summary judgment and disposed of under Rule 56 R.C.P. if there is no genuine issue as to any material fact in connection therewith...." Syllabus Point 4, *United States Fidelity & Guaranty Co. v. Eades,* 150 W.Va. 238, 144 S.E.2d 703 (1965).

Syl. pt. 1, in part, *Poling v. Belington Bank, Inc.,* 207 W.Va. 145, 529 S.E.2d 856 (1999) (Emphasis added). Similarly, Rule 12(b) itself states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added).

In the instant case, the Estate attached an affidavit to its brief in opposition to Mr. Hall's 12(b)(6) motion to dismiss. The circuit court's order dismissing Mr. Hall failed to state that the court had excluded the affidavit from its consideration. Because the circuit court considered matters outside the pleading, its decision must be treated as one for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.

■ Having concluded that the circuit court's order is one for summary judgment, we note that the standard for our review is *de novo:* "'A circuit court's entry of summary judgment is reviewed de novo.' Syllabus point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 1, *Shaffer v. Acme Limestone Co., Inc.,* 206 W.Va. 333, 524 S.E.2d 688 (1999). When reviewing a lower court's decision regarding summary judgment, we apply the same standard required of the circuit court. *See Cottrill v. Ranson,* 200 W.Va. 691, 695, 490 S.E.2d 778, 782 (1997) ("We review a circuit court's decision to grant summary judgment de novo and apply the same standard for summary judgment that is to be followed by the circuit court." (citing *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335 (1995)). In this regard, we have long held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal*

---

**3.** We find no order in the record addressing the Estate's Rule 60(b) motion.

*Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Having established the proper standard for our review, we proceed with our consideration of this case.

## III.

## DISCUSSION

### A. Motion to Dismiss

■ The motion to dismiss filed by Mr. Hall is potentially dispositive of this matter and, therefore, must be resolved before we reach the substantive issues raised in this appeal. In his motion to dismiss, Mr. Hall claims that the appeal was not timely filed. We disagree.

The order granting summary judgment to Mr. Hall disposed of one of the parties to multiple party action. Rule 54(b) of the West Virginia Rules of Civil Procedure states:

*Judgment upon multiple claims or involving multiple parties.*—When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added).

■ In the instant case, the trial court's order did not include the specific Rule 54(b) language stating "there is no just reason for delay." Likewise, the order failed to expressly direct the entry of judgment. We have previously interpreted Rule 54(b) broadly and, instead of requiring that specific language be contained in an order disposing of fewer than all the claims or parties, we have concluded that such an order may be appealed if it is clear that it was intended to be a final order. In this regard, we held in Syllabus point 2 of *Durm v. Heck's, Inc.,* 184 W.Va. 562, 401 S.E.2d 908 (1991):

Where an order granting summary judgment to a party completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure indicating that "no just reason for delay" exists and "directi[ng] ... entry of judgment" will not render the order interlocutory and bar appeal *provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect.*

(Emphasis added). *See also,* Syl. pt. 2, *Gooch v. West Virginia Dep't of Pub. Safety,* 195 W.Va. 357, 465 S.E.2d 628 (1995) (same); Syl. pt. 1, *Sisson v. Seneca Mental Health/Mental Retardation Council, Inc.,* 185 W.Va. 33, 404 S.E.2d 425 (1991) (same). Because the circuit court's order dismissing Mr. Hall did not contain the express language of Rule 54(b), its appealability immediately after entry is dependent upon this Court's ability to determine, from the order itself, that it approximated a final order in its nature and effect. We have thoroughly considered the order and are unable to make such a determination. Consequently, we find the order was interlocutory and not subject to appeal prior to the entry of the final order disposing of the entire civil action. *See* Syl. pt. 6, *Riffe v. Armstrong,* 197 W.Va. 626, 477 S.E.2d 535 (1996) ("'"Where an appeal is properly obtained from an appealable decree either final or interlocutory, such appeal will bring with it for review all preceding non-appealable decrees or orders, from which have arisen any of the errors complained of in the decree appealed from, no matter how long they may have been rendered before the appeal was taken." Point 2, syllabus, *Lloyd v. Kyle,* 26 W.Va. 534 [1885].' Syllabus point 5, *State ex rel. Davis v. Iman Mining Co.,* 144 W.Va. 46, 106 S.E.2d 97 (1958)."). The instant appeal was filed before the expiration

of the four month appeal period that followed the final order terminating the entire action.[4] Therefore, it is timely.[5] Accordingly, we proceed with our analysis.

### B. Immunity and Duty

■ The circuit court granted Mr. Hall's motion to dismiss based upon its conclusion that Mr. Hall was entitled to immunity and, additionally, owed no duty to Mr. Robinson. The Estate has raised various arguments why the circuit court erred in granting the motion. We need not delve into the specifics of the parties arguments in this regard, however. As we have pointed out, the motion to dismiss was converted to summary judgment. As such, our decision in *Fayette County National Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997), controls. In *Lilly* we held, in Syllabus point 3:

Although our standard of review for summary judgment remains de novo, a circuit court's order granting summary

judgment must set out factual findings sufficient to permit meaningful appellate review. Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed.

■ Judge Henning's summary judgment order does not comply with *Lilly*. The order merely sets out legal conclusions. It omits findings of fact.[6] We find the absence of factual findings particularly troubling with respect to the determination of whether or not Mr. Hall owed a specific duty to the decedent. Indeed, it may be that the circuit judge will conclude that additional factual development is required before a proper summary judgment determination can be made. *See* W. Va. R. Civ. P. 12(b) (directing that when a 12(b)(6) motion is converted to summary judgment, "*all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56* " (emphasis added)).[7]

---

4. According to Rule 3(a) of the West Virginia Rules of Appellate Procedure:

    *Time for petition.*—No petition shall be presented for an appeal from, or a writ of supersedeas to, any judgment, decree or order, which shall have been rendered *more than four months* before such petition is filed in the office of the clerk of the circuit court where the judgment, decree or order being appealed was entered, whether the State be a party thereto or not; provided, that the judge of the circuit court may for good cause shown, by order entered of record prior to the expiration of such period of four months, extend and re-extend such period, not to exceed a total extension of two months, if a request for the transcript was made by the party seeking an appeal or supersedeas within thirty days of the entry of such judgment, decree or order. In appeals from administrative agencies, the petition for appeal shall be filed within the applicable time provided by the statute.
    (Emphasis added).

5. In his argument that the Estate's petition for appeal was not timely, Mr. Hall correctly asserts that a Rule 60(b) motion such as the one filed by the Estate does not toll the period for appeal. *See* Syl. pt. 3, *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992) ("A motion which would otherwise qualify as a Rule 59(e) motion that is not filed and served within ten days of the entry of judgment is a Rule 60(b) motion regardless of how styled *and does not toll the four month appeal period for appeal to this court.*" (emphasis added)); *Savage v. Booth*, 196 W.Va. 65, 68 n. 5, 468 S.E.2d 318, 321 n. 5 (1996) ("Rule 59(e) tolls

the time period for appeal, ... Rule 60(b) does not ...."). However, because we have determined that the order dismissing Mr. Hall was interlocutory, his argument as to Rule 60(b) is irrelevant.

6. The order succinctly stated Judge Henning's conclusion that the court "does find the Defendant Dwight Richard Hall to be immune from liability in this action pursuant to West Virginia law. In addition, the Court does find that there was no duty owed by the Defendant Dwight Richard Hall."

7. Since Judge Henning has recused himself from this case, it will be addressed on remand by Judge Frye. We note, however, that Judge Frye will not be bound by the record that existed at the time Judge Henning made his ruling. On the contrary, Judge Frye will be free to take any action that Judge Henning could have taken if the case were remanded to his court. *Cf* W. Va. R. Civ. P. 63 ("If at any time after a trial or hearing has been commenced the judge is unable to proceed, any other judge may proceed with the matter upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness."); Syl. pt. 7, *Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592 (1997) ("Generally, when a successor judge is

## IV.

## CONCLUSION

For the reasons herein explained, we conclude that the instant appeal was timely. Moreover, because the final order did not comply with *Fayette County National Bank v. Lilly,* we remand the case for additional proceedings not inconsistent with this opinion.

Reversed and Remanded.

STARCHER, Justice, concurring:

(Filed July 10, 2001)

I concur with the majority opinion's decision to reverse the dismissal of the plaintiffs' claims, and to remand this case to the circuit court for additional proceedings. I write separately, however, because I believe that, regardless of the circuit court's lack of factual findings, the Court could have gone further and addressed the legal positions of the parties.

This Court recently made clear that while a court-appointed attorney may be immune from suit for acting negligently during the course of representing a client, the attorney can still be held liable if the attorney acts recklessly. *See* Syllabus Point 5, *Powell v. Wood County Comm'n,* 209 W.Va. 639, 550 S.E.2d 617 (2001). ("When a court appoints a private attorney to represent a client pursuant to W. Va.Code § 29–21–1, *et seq.,* and that client then sues the attorney for malpractice in connection with that representation, the attorney shall be immune from liability arising from that representation in the same manner and to the same extent that prosecuting attorneys are immune from liability.") We have often used the following definition for "reckless" conduct:

> The usual meaning assigned to "wilful," "wanton" or "reckless," according to taste as to the word used, is that the actor has *intentionally* done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken

to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a *conscious* indifference to the consequences, amounting almost to willingness that they shall follow; and it has been said that this is indispensable.

*Cline v. Joy Mfg. Co.,* 172 W.Va. 769, 772 n. 6, 310 S.E.2d 835, 838 n. 6 (1983), *quoting* W. Prosser, *Handbook of the Law of Torts* 185 (4th Ed.1971) (with emphasis added).

An attorney appointed by a court not only represents a client's interests .in the courtroom, but the scope of the representation includes "proceedings which are ancillary to" criminal charges which may result in incarceration. *W.Va.Code,* 29–21–2(2) [1996]. One would presume this would mean taking "protective action when the lawyer reasonably believes that the client cannot adequately act in the client's own interest." *Rules of Professional Responsibility,* Rule 1.14.

The plaintiffs' complaint clearly alleged that the attorney appointed by the court, defendant Dwight Hall, was reckless, and acted with a wanton disregard for the rights of his client, Bobby J. Robinson. Like any other person incarcerated behind bars, Mr. Robinson relied upon the goodwill of others—such as his jailers and his court-appointed attorney—to care for his well being. His attorney apparently knew—not "should have known," but actually knew—that Mr. Robinson was greatly depressed about his impending divorce, had been diagnosed with a mental illness, and had, *in the recent past,* attempted to commit suicide.

The complaint alleged that Mr. Robinson professed suicidal ideations while he was incarcerated. His wife, his mother, and an attorney of high regard apparently told Mr. Hall that Mr. Robinson might commit suicide, and asked that Mr. Hall intervene to see that Mr. Robinson received medical and psychological care.

A reasonable lawyer could have concluded that Mr. Robinson was not in a position to

---

properly assigned pursuant to Rule 63 of the West Virginia Rules of Civil Procedure, such successor judge steps into the shoes of his or her predecessor and, when the transcript of the pro-

ceedings is sufficient, may take any action that such predecessor may properly have taken, either upon proper motion or *sua sponte.*").

"adequately act in [his] own interest" when he was incarcerated in the Randolph County Jail. As part of Mr. Hall's appointment, he was charged with matters "ancillary" to representing Mr. Robinson in the courtroom on his criminal charges—which would include taking "protective action" such as seeking medical care or psychological assistance.

It appears that Mr. Hall had the knowledge and the ability to act, to intervene on Mr. Robinson's behalf and to seek medical assistance. With all the knowledge of the risk that Mr. Robinson might commit suicide, Mr. Hall took no action on behalf of Mr. Robinson, appearing consciously indifferent to Mr. Robinson's situation, and consciously indifferent to the likelihood he might die by his own hand. By any account, this, if proven, qualifies as "reckless" conduct.

Before the circuit court, counsel for Mr. Hall argued that the plaintiffs' allegations were "specious" and "not worthy of a response." My reading of the record suggests that the attorneys now representing the plaintiffs' family did not choose to sue Mr. Hall out of a spirit of malice or vindictiveness. One of the plaintiffs' attorneys has nearly 2 decades of experience—he's been an attorney since 1983, by my reckoning—successfully pursuing complex negligence actions. It is unlikely that such an experienced, successful trial lawyer would bring a frivolous lawsuit or pursue an action without a reasonable belief that the defendant owed a plaintiff a duty, and failed to carry out that duty.

I am therefore frustrated that the majority opinion did not go further in addressing the legal status of the plaintiffs' claims. The claim asserted by the plaintiffs against Mr. Hall may be novel, but it needs resolution so that attorneys appointed by courts to represent indigent defendants will understand their duties—both in the courtroom and out—towards an incarcerated client.[1] Attor-

neys are not charged with speculating, diagnosing, or otherwise magically discerning the medical or mental condition of their clients. But when a client is incarcerated, and his only outside contact with the "legal world" is his court-appointed attorney, and the attorney has specific knowledge of a life-threatening medical or mental condition, the attorney has a duty to act in the client's best interests. The Court should have taken this opportunity and made this clear.

I firmly believe that Mr. Hall owed his client a duty of care, to insure that his incarcerated client received adequate medical and psychological care from his jailors. In the face of this duty, Mr. Hall apparently did nothing. Such evidence could be interpreted by a reasonable fact-finder as evidence that he knew of a particular risk (that Mr. Robinson was psychologically imbalanced and was threatening suicide), and deliberately, intentionally disregarded that risk with a conscious indifference to the consequences of his actions.

In sum, while I believe that there was a sufficient record to find that the complaint stated a cause of action upon which relief could be granted, I agree with the remand of this case to the circuit court for reconsideration. I therefore respectfully concur with the majority's opinion.

ALBRIGHT, Justice, concurring:

(Filed July 12, 2001)

I concur with the majority opinion's decision to reverse the dismissal of the Plaintiffs' claims and to remand this case to the circuit court for additional proceedings. I write separately to underline the need for a full consideration of the claims dismissed below on the erroneous ground that they did not state a claim upon which recovery could be had.

---

1. Mr. Hall's failure to act could be interpreted as confusion among members of the Bar regarding their duties towards incarcerated clients. Mr. Hall did not feel compelled to protect Mr. Robinson's medical well-being while he was held in the Randolph County Jail.

However, J. Burton Hunter, III, was an attorney only hired to represent Mr. Robinson in a

divorce matter—yet when he learned of Mr. Robinson's incarceration and his voicing of suicidal ideations, he made a special effort to contact the county commission, the sheriff who oversaw the operation of the jail, and Mr. Hall. Mr. Hunter felt compelled to protect his client, even though Mr. Robinson's incarceration was not within the scope of his representation.

514

A complaint should not be dismissed on a Rule 12(b)6 motion unless it appears beyond doubt that there is no provable set of facts which would entitle the plaintiff to relief. *Owen v. Board of Education,* 190 W.Va. 677, 441 S.E.2d 398 (1994). And, we have said that, even in the case of motions for summary judgment, time for adequate discovery should be allowed before consideration of the motion where there is a reasonable prospect that actionable facts can be obtained in the discovery process. *Harrison v. Davis,* 197 W.Va. 651, 478 S.E.2d 104 (1996). Our law favors cases being decided on their merits, and the standard for overcoming a 12(b)6 motion is a liberal one with a light burden of proof. *John W. Lodge Distributing Co. v. Texaco,* 161 W.Va. 603, 245 S.E.2d 157 (1978).

Here it appears from the record that the Plaintiffs were denied any opportunity to conduct discovery and the motion to dismiss for failure to state a claim was granted upon a conclusion of law, that the lawyer representing Plaintiffs' decedent owed that decedent no duty to seek help for the decedent when he threatened suicide while incarcerated in jail, accused of the offense for which the lawyer represented decedent.

I understand the reluctance of the trial court to find that counsel for incarcerated defendants owe their clients some sweeping duty to investigate each jailhouse complaint heard from their clients. However, it cannot be denied that the relationship of lawyer-client is a highly fiduciary one, requiring of the lawyer good faith and fidelity to the interests of a client, who may have reposed the highest personal trust and confidence in his or her lawyer. See 7 Am.Jur.2d *Attorneys at Law* § 137 (1997). Because the case below was cut off before discovery was even begun, we do not know yet if Plaintiffs can bring forth facts that tend to prove that, in all the circumstances of the case, decedent's counsel breached not some novel and sweeping duty, but his clearly established fiduciary duties as decedent's lawyer (including those of fidelity and good faith).

In the case before us, Plaintiffs can have no recovery against the lawyer Defendant unless it is shown that the lawyer acted recklessly. *See* Syllabus Point 5, *Powell v. Wood County Commission,* 209 W. Va. 639,

550 S.E.2d 617 (2001). Therefore, Plaintiffs must show conduct of the decedent's lawyer which is not merely negligent, but, in the circumstances, reckless. As daunting as that may be, it cannot fairly be said to be impossible, absent a fair opportunity to the Plaintiffs to obtain and adduce that evidence in a judicial setting, by discovery or by trial.

Since we do not here know the circumstances in which the defendant lawyer disregarded his client's call for help, it cannot in my view be said here and now that the lawyer's conduct was or was not reckless. However, common experience tells us that jailhouse suicides are not infrequent. Common experience tells us that a threat of suicide may or may not be serious, but it is always disturbing. Common experience tells us that a call to a lawyer is most often a call for help of some kind. And, I respectfully suggest that the common experience of lawyers practicing criminal law gives them some ability to distinguish a crank jailhouse call from a genuine plea for help, the latter requiring a response commensurate with the fiduciary duty lawyers owe their clients, and consistent with the fidelity and good faith inherent in the lawyer-client relationship.

In an employment context, this Court recognized that the wilful disregard of a recognized safety standard, with subjective realization of the standard and the potential for grave harm flowing from its disregard, amounted to reckless, deliberate and intentional conduct. *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978). While our Legislature later supplanted the resulting cause of action with a statutory one, it appears that the fundamental principle of that case retains vitality. In my view, it cannot now be said that Plaintiffs might not, in the context of the fiduciary relationship between Plaintiffs' decedent and his lawyer, prove such a set of facts and circumstances as would entitle the Plaintiffs to relief for reckless conduct. Clearly, Plaintiffs should have a reasonable opportunity to pursue their claims as pled or provable.