707 S.E.2d 859

## FOUNTAIN PLACE CINEMA 8, LLC, Respondent

v.

## Christopher G. MORRIS, as State Tax Commissioner of West Virginia, Petitioner.

### No. 35632.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 8, 2011.

Decided Feb. 16, 2011.

Dissenting Opinion of Justice Davis Feb. 17, 2011.

KETCHUM, Justice:

In this appeal from the Circuit Court of Logan County, we are asked to consider an appeal by the State Tax Commissioner of West Virginia. The Tax Commissioner asserts that the circuit court incorrectly interpreted *W.Va.Code*, 11–13Q–19(a)(5) [2002], and thereby incorrectly permitted a movie theater to claim an economic opportunity tax credit as a "destination-oriented recreation and tourism" business.

After careful consideration, we find that the circuit court properly gave the statutory phrase "destination-oriented recreation and tourism" its common, ordinary and accepted meaning. As set forth below, we affirm the circuit court's conclusion that the movie theater was entitled to the tax credit.

### I.

### *Facts and Background*

Fountain Place Cinema 8, LLC ("Fountain Place"), owns and operates a 26,000 square-foot, eight-screen movie theater in Logan, West Virginia. The theater was constructed in 2006, and Fountain Place asserts it invested $3,931,763.00 in the theater. Each year, approximately 200,000 patrons visit the theater. Fountain Place states that about 30% of those patrons are residents of the nearby Commonwealth of Kentucky,[1] and that another 10% of the patrons are non-residents of the Logan area visiting the Hatfield–McCoy Trail System[2] who, as part of their visit, decide to attend a movie.

On October 15, 2007, Fountain Place applied to the Tax Commissioner for a tax credit under the West Virginia Economic Opportunity Tax Credit Act ("the EOTCA"). *See, W.Va.Code*, 11–13Q–1 to–22. The EOTCA allows a business to take a tax credit for investments in industry or business activities that are, among other things, centered upon "[d]estination-oriented recreation and tourism[.]" *W.Va.Code*, 11–13Q–19(a)(5) [2002].

Ancil G. Ramey, Esq., L. Frederick Williams, Jr., Esq., Steptoe & Johnson, PLLC, Charleston, WV, for Respondent.

Darrell V. McGraw, Jr., Attorney General, L. Wayne Williams, Assistant Attorney General, Charleston, WV, for Petitioner.

1. According to the testimony of a Fountain Place employee, Logan is "about 20 miles" from the Kentucky border. The Tax Commissioner asserts, based upon internet research, that the movie theater is 30.19 miles from the border.

2. The Hatfield–McCoy Trail System is part of the Hatfield–McCoy Regional Recreation Authority, and is a collection of more than 500 miles of trails for riders of all-terrain vehicles and dirt-bikes across southwestern West Virginia.

The tax credit can only be taken for investments in a new or expanded business, and which create new jobs. Fountain Place claimed it was entitled to an EOTCA tax credit because its theater was a new business engaged in the activity of destination-oriented recreation and tourism. Fountain Place noted that for the tax year 2006, it had a "qualified investment" of $3,931,763.00 and a "new jobs percentage" of 10%, which entitled it to a maximum tax credit of $39,317.63 each year for the years 2006 through 2015 (a total of $393,176.30).

In a letter dated November 16, 2007, the Tax Commissioner denied the EOTCA credit sought by Fountain Place. The Tax Commissioner concluded that the Fountain Place theater was not a business engaged in "destination-oriented recreation and tourism."

Fountain Place appealed the Tax Commissioner's decision to the Office of Tax Appeals. After a hearing, on March 2, 2009, an administrative law judge affirmed the decision of the Tax Commissioner.

Fountain Place then appealed the decision to the Circuit Court of Logan County. In a detailed order on November 13, 2009, the circuit court concluded that Fountain Place was entitled to the tax credit as a destination-oriented recreation and tourism business, and reversed the decision of the Office of Tax Appeals.

In its order, the circuit court made clear that the phrase "destination-oriented recreation and tourism" in W.Va.Code, 11–13Q–19(a)(5) was not defined either by the Legislature in a statute or by the Tax Commissioner in a regulation. The circuit court therefore turned to a dictionary for the common, everyday meanings of the words in the phrase. The circuit court concluded (with citations omitted):

28. "Destination" is defined as "the place to which a person or thing is going or sent. . . ."

29. "Recreation" is defined as "refreshment in body or mind, as after work, by some form of play, amusement, or relaxation."

30. "Tourism" is defined as "tourist travel, especially when regarded as a source of income for a country, business, etc." "Tourist" includes "one who makes a tour; one who makes a journey for pleasure." "Travel" is defined as "the act or process of traveling[,]" with "traveling" relating to "a passing from place to place; the act of performing a journey."

31. Thus, "destination-oriented recreation and tourism" consists of traveling from one location to another for the purpose of amusement and/or relaxation, when such travel provides a source of income to a business entity.

The circuit court took into account that whether a business qualified for the tax credit was necessarily a fact-based decision which should include consideration of

(1) the economy of the region, (2) the availability of other recreational choices in the area, (3) the cultural significance of the business or activity, (4) the business's distance from other similar businesses, [and] (5) the amount of patronage from local or nearby customers versus customers from farther away.

Examining the record made before the Office of Tax Appeals, the circuit court determined (in part because each year as many as 60,000 of Fountain Place's customers traveled from places outside the economically-distressed Logan area for the purpose of watching a movie, and another 20,000 customers traveled to the Logan area to visit the Hatfield–McCoy Trail System) that Fountain Place was entitled to the EOTCA tax credit.

The Tax Commissioner now appeals the circuit court's November 13, 2009 order.

## II.

### Standard of Review

■ The sole question we are asked to resolve in this appeal is this question of law: may a movie theater qualify for a tax credit as a business engaged in "destination-oriented recreation and tourism" pursuant to W.Va.Code, 11–13Q–19(a)(5)? [3] "Interpret-

---

**3.** To put it mildly, W.Va.Code, 11–13Q–19(a)(5) is inelegantly crafted. The statute states (in pertinent part):

ing a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syllabus Point 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

## III.

### Discussion

Fountain Place argues that the circuit court correctly found that the phrase " 'destination-oriented recreation and tourism' consists of traveling from one location to another for the purpose of amusement and/or relaxation, when such travel provides a source of income to a business entity."

The Tax Commissioner argues that the circuit court's proposed definition of the phrase is wrong, because it places too much emphasis on the recreation aspect of the statute while minimizing the significance of the destination aspect. The Tax Commissioner also asserts that the circuit court focused too little on the fact that movie patrons are not engaged in tourism. The Tax Commissioner argues that, to be eligible for the tax credit, a business must be engaged in both "destination-oriented recreation" *and* "destination-oriented tourism." The Tax Commissioner contends that the only proper reading of the statute is that the destination must be the primary motivating factor for traveling to West Virginia. The Tax Commissioner says this means the statute requires Fountain Place to prove that the "primary motivating factor for its Kentucky customers to travel to Logan was to see a movie at Fountain Place Cinema" and not some other activity, such as shopping or eating.

In enacting the EOTCA, the Legislature did not define the phrase "destination-oriented recreation and tourism," and the Tax Commissioner has not enacted any regulations interpreting the phrase. Both Fountain Place and the Tax Commissioner agree that the statutory phrase is unclear and is

ambiguous. The Office of Tax Appeals and the circuit court reached a similar conclusion. And, at oral argument before this Court, counsel for the Tax Commissioner could not offer a complete definition.

 This Court has held that "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949). A statute is ambiguous when the statute's language connotes "doubtfulness, doubleness of meaning ... indistinctness or uncertainty of an expression[.]" *Crockett v. Andrews*, 153 W.Va. 714, 718–19, 172 S.E.2d 384, 387 (1970). The statutory phrase "destination-oriented recreation and tourism" is an indistinct, vague phrase that is susceptible to differing constructions, and reasonable minds are uncertain and disagree about its meaning. Accordingly, we find that *W.Va.Code*, 11–13Q–19(a)(5) is ambiguous.

 "A statute that is ambiguous must be construed before it can be applied." Syllabus Point 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). Further, an ambiguous statute must be construed to achieve the Legislature's intended goals. The Legislature stated that the EOTCA tax credit is intended "to encourage greater capital investment in business in this state and thereby increase economic opportunity in this state[.]" *W.Va.Code*, 11–13Q–2 [2002]. However, the Legislature indicated that the EOTCA must "be reasonably construed" to achieve these intended goals. *W.Va.Code*, 11–13Q–16(b) [2002].

 Because the phrase "destination-oriented recreation and tourism" is not defined in the EOTCA, we must construe the phrase and give the words in the phrase their common, ordinary and accepted meanings. As

(a) Notwithstanding any other provision of this article to the contrary, except as provided in section five of this article, no entitlement to the economic opportunity tax credit may result from, and no credit is available to any taxpayer

for, investment placed in service or use except for taxpayers engaged in the following industries or business activities: ...

(5) Destination-oriented recreation and tourism; ...

we once stated, "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syllabus Point 1, *Miners in General Group v. Hix,* 123 W.Va. 637, 17 S.E.2d 810 (1941). *In accord,* Syllabus Point 6, in part, *State ex rel. Cohen v. Manchin,* 175 W.Va. 525, 336 S.E.2d 171 (1984) ("Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning."). "Plain language should be afforded its plain meaning." *Crockett v. Andrews,* 153 W.Va. at 719, 172 S.E.2d at 387.

The common, ordinary and accepted dictionary definition of the word "destination" is "the place for which a person or thing is destined; the intended end of a journey or course"[4] and "the place to which a person … travels or is sent."[5] The word "oriented" is something "[h]aving an emphasis, bias or interest indicated by a preceding [subject] (usu[ally] joined by a hyphen)."[6]

The word "recreation" means the act of refreshing or enlivening the mind and spirit "by some pleasant occupation, pastime or amusement,"[7] as well as "a pastime, diversion, exercise, or other resource affording relaxation and enjoyment."[8]

Finally, it appears that the word "tourism," in the context of the statute, means "the business or industry of providing information, accommodations,[9] transportation or other services" to a person who is traveling, especially for pleasure.[10] Put another way, "tourism" is "the business of attracting tourists"—people who "travel[ ] for pleasure or

culture"—"and providing for their accommodation and entertainment[.]"[11]

Assembling these terms, we hold that a "destination-oriented recreation and tourism" business activity, as the phrase is used in *W.Va.Code,* 11–13Q–19(a)(5) [2002], is a business to which people travel that emphasizes providing some pastime, diversion, entertainment or amusement.

In reaching our holding, we wish to make clear that we find no fault in the arguments of the Tax Commissioner, who is struggling to give the statute a narrow reading so as to protect the public fisc. But the Legislature chose to use nebulous, broad and expansive terms without definitions when it created the tax credit contained in *W.Va. Code,* 11–13Q–19(a)(5). Neither this Court nor the Tax Commissioner can insert language by interpretation into a tax statute that widens or narrows the statute's application; the power of the purse lies solely with the Legislature, and so too does the power to alter the tax statutes.

With this definition resolved, the question then remains whether the circuit court erred in finding that the Fountain Place theater facility was such a business entitled to exercise the EOTCA tax credit. After carefully examining the record developed before the Office of Tax Appeals, we find that the circuit court's decision was supported by the evidence.

### IV.

#### *Conclusion*

The circuit court's November 13, 2009 order is affirmed.

Affirmed.

Justice DAVIS dissents, and reserves the right to file a separate opinion.

---

**4.** IV *Oxford English Dictionary* 536 (2nd Ed.1991).

**5.** *Random House Webster's Unabridged Dictionary* 540 (2nd Ed.1999).

**6.** X *Oxford English Dictionary* 932.

**7.** XIII *Oxford English Dictionary* 372.

**8.** *Random House Webster's Unabridged Dictionary,* 1613.

**9.** The word "accommodation" means "something supplied for convenience or to satisfy a need" including "lodging, food, and services." *Webster's New Collegiate Dictionary* 7 (1979).

**10.** *Random House Webster's Unabridged Dictionary,* page 2002.

**11.** XVIII *Oxford English Dictionary* 306.

DAVIS, J., dissenting:

Filed Feb. 17, 2011.

In this proceeding, the majority affirmed the trial court's ruling finding that Fountain Place Cinema was entitled to a tax credit of $393,176.30 because it engaged in "destination-oriented recreation and tourism." The majority opinion broadly defined this phrase to mean that any business in the State, to which people travel, and that provides "some pastime, diversion, entertainment or amusement," is entitled to a tourism tax credit. According to the majority opinion, the Legislature intended such a result. However, the majority's incorrect decision has far-reaching negative consequences for the State's financial stability. Consequently, for the reasons set out below, I respectfully dissent.

## The Majority Opinion Ignored Basic Principles of Statutory Construction

The parties involved in this proceeding agree that the phrase "destination-oriented recreation and tourism" is not defined by W.Va.Code, § 11–13Q–19(a)(5) (2002) (Repl. Vol.2008) of the Economic Opportunity Tax Credit Act. There also was no disagreement that the phrase "destination-oriented recreation and tourism" is ambiguous as it is set out under the statute. As pointed out in the majority opinion, our cases have held that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syl. pt. 1, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). Yet the majority ignored this principle of law because it failed to attempt to ascertain the legislative intent behind the phrase "destination-oriented recreation and tourism."

The majority opinion limited its analysis to looking at the broad definition of each term in the phrase "destination-oriented recreation and tourism." After setting out the broad definitions of those terms, the majority ended its analysis. By ceasing its analysis of legislative intent with a scant examination of the terms and then adopting broad definitions for the phrase in question, the majority opinion ignored the principle of law statutory holding that a court has a duty " 'to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' " Syl. pt. 3, in part, *Powell v. Wood Cnty. Comm'n*, 209 W.Va. 639, 550 S.E.2d 617 (2001) (quoting Syl. pt. 2, in part, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925)).

The majority had a duty to examine the phrase "destination-oriented recreation and tourism" in the context of other statutory provisions related to the same subject. This Court has long held that " '[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent.' " *Clower v. West Virginia Dep't. of Motor Vehicles*, 223 W.Va. 535, 539, 678 S.E.2d 41, 45 (2009) (quoting Syl. pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975)). The majority opinion ignored this principle of law by failing to examine any other statutory provision that would have shed light on the legislative intent of the phrase "destination-oriented recreation and tourism." An examination of other statutory provisions was mandated because of the context in which the phrase is found.

The phrase "destination-oriented recreation and tourism" found in W.Va.Code, § 11–13Q–19(a) is only one of six items set out under the statute. The statute provides, in relevant part:

(a) Notwithstanding any other provision of this article to the contrary, except as provided in section five [§ 11–13Q–5] of this article, no entitlement to the economic opportunity tax credit may result from, and no credit is available to any taxpayer for, investment placed in service or use except for taxpayers engaged in the following industries or business activities:

(1) Manufacturing, including, but not limited to, chemical processing and chemical manufacturing, manufacture of wood products and forestry products, manufacture of aluminum, manufacture of paper, paper processing, recyclable

paper processing, food processing, commercial hydroponic growing of food crops, manufacture of aircraft or aircraft parts, manufacture of automobiles or automobile parts, and all other manufacturing activities, but not timbering or timber severance or timber hauling, or mineral severance, hauling, processing or preparation, or coal severance, hauling, processing or preparation or synthetic fuel manufacturing taxable under section two-f [§ 11–13–2f], article thirteen of this chapter;

(2) Information processing, including, but not limited to, telemarketing, information processing, systems engineering, back office operations and software development;

(3) The activity of warehousing, including, but not limited to, commercial warehousing and the operation of regional distribution centers by manufacturers, wholesalers or retailers;

(4) The activity of goods distribution (exclusive of retail trade);

(5) *Destination-oriented recreation and tourism;* and

(6) Research and development, as defined in section three [§ 11–13Q–3] of this article.

(Emphasis added). In looking at the various types of businesses set out under this statute, it is clear that a determination of whether a movie theater classifies as a "destination-oriented recreation and tourism" business necessitates an examination of other statutory provisions addressing this type of activity.

As pointed out in the brief of the Tax Commissioner, pursuant to W.Va.Code, § 5B–2E–1 (2004) (Repl.Vol.2010) of the West Virginia Tourism Development Act, the Legislature has provided a specific type of tax credit for tourist businesses.[1] Under W.Va.Code, § 5B–2E–3(14) (2007) (Repl.Vol. 2010), the Legislature defined "tourism attraction" to mean "a cultural or historical site, a recreation or entertainment facility, an area of natural phenomenon or scenic beauty, a West Virginia crafts and products center or an entertainment destination center...."[2] Under W.Va.Code, § 5B–2E–3(9), the Legislature specifically defined an "entertainment destination center" as being a business that is composed of a multiplex theater and other facilities. The statute states:

"Entertainment destination center" means a facility containing a minimum of two hundred thousand square feet of building space adjacent or complementary to an existing tourism attraction, an approved project, or a major convention facility and which provides a variety of entertainment and leisure options that contain at least one major theme restaurant and at least three additional entertainment venues, including, but not limited to, live entertainment, multiplex theaters, large-format theaters, motion simulators, family entertainment centers, concert halls, virtual reality or other interactive games, museums, exhibitions or other cultural and leisure time activities. Entertainment and food and drink options shall occupy a minimum of sixty percent of total gross area, as defined in the application, available for lease and other retail stores shall occupy no more than forty percent of the total gross area available for lease.

W.Va.Code, § 5B–2E–3(9).

Thus, it is clear that, under W.Va.Code, § 5B–2E–3(9), a movie theater, standing alone, would not be considered a tourist entertainment destination center.[3] Under this

1. The Tax Commissioner's brief correctly pointed out that the tax credit set out under the West Virginia Tourism Development Act is different from that set out under the Economic Opportunity Tax Credit Act.

2. This statute further provides, at subsection (14)(c), that a tourism attraction *does not include* "[a] recreational facility that does not serve as a likely destination where individuals who are not residents of the state would remain overnight in

commercial lodging at or near the ... existing attraction." W.Va.Code, § 5B–2E–3(14)(c).

3. Obviously, because the Legislature included a movie theater as being one type of business that could help establish an "entertainment destination center," the Legislature did not intend for the phrase "entertainment facility" found in W.Va.Code, § 5B–2E–3(9) to mean a movie theater. The Tax Commissioner has pointed out that, by regulation, the West Virginia Division of

statute, a movie theater is merely one of several types of businesses that could qualify collectively as an entertainment destination center. The Tax Commissioner's brief indicates that Fountain Place Cinema is located in a strip mall that includes WalMart, Lowe's Home Improvement Center, and other retail businesses. Jointly, these businesses could not make the strip mall an entertainment destination center.[4]

If the majority opinion had not ignored the rules of statutory construction, and had instead, examined the West Virginia Tourism Development Act, it would have reached the logical conclusion that the Legislature did not intend for the phrase "destination-oriented recreation and tourism" to include a movie theater standing alone. The majority's construction of the phrase is simply wrong because every movie theater in the State now qualifies as a "destination-oriented recreation and tourism" facility. Clearly, the Legislature did not intend this financially crippling definition. Moreover, the majority's interpretation of the phrase "destination-oriented recreation and tourism" makes it possible for

an untold number of diverse businesses to qualify as tourist destinations merely because, under Syllabus point 4 of the majority opinion, they qualify as facilities that people travel to which provide "some pastime, diversion, entertainment or amusement." For example, under Syllabus point 4, every qualified bar[5] in the State that has a pool table or any other type of "diversion" now qualifies for the tax credit under the Economic Opportunity Tax Credit Act. Taken to its extreme, every qualified gas station in the State that has an arcade style game will drain the State's budget by claiming a tax credit under the Economic Opportunity Tax Credit Act.

For the foregoing reasons, I respectfully dissent.

---

Tourism has indicated that an entertainment facility includes "pari-mutuel gaming establishments, live performing art centers, sporting organizations or arenas, vineyards or wineries." W.Va. C.S.R., § 144–1–2.4.2.

4. Further, under W.Va.Code, § 5B–2E–3(14), a movie theater would not be considered a tourist recreational facility, because it is not the type of

business where individuals who are not residents of the State would remain overnight in commercial lodging at or near the theater.

5. I say qualified because there are other factors that must be met under the Economic Opportunity Tax Credit Act.