693 S.E.2d 333

**John David MOONEY, an Individual, Plaintiff Below, Respondent,**

v.

**Michael FRAZIER, an Individual, and Frazier & Oxley, L.C., West Virginia Legal Corporation, Defendants Below, Petitioners.**

No. 35224.

Supreme Court of Appeals of West Virginia.

Submitted March 2, 2010.

Decided April 1, 2010.

See also, 497 F.3d 397.

Michael M. Fisher, Ben M. McFarland, Jackson Kelly PLLC, Charleston, WV, for Petitioners.

Nicholas S. Preservati, Joseph L. Jenkins, Preservati Law Offices, Charleston, WV, for Respondent.

DAVIS, Chief Justice:

This matter comes before this Court upon a request from the Circuit Court of Cabell County to answer three certified questions. The parties briefing the certified questions are: John David Mooney, respondent/plain-

tiff below, and Michael Frazier and Frazier & Oxley, L.C. (hereinafter collectively Mr. Frazier), petitioners/defendants below. By order dated April 7, 2009, the circuit court certified the following three questions to this Court:

1. Whether the statute of limitations on a legal malpractice action stemming from the defense of a criminal defendant begins to run when the criminal defendant files a habeas corpus petition claiming that he suffered ineffective assistance of counsel in the underlying criminal proceedings?

Answer: Yes __X__ No ____

2. Is a criminal defendant collaterally estopped from filing a civil legal malpractice claim against his attorney until the underlying criminal conviction is overturned?

Answer: Yes ____ No __X__

3. Whether, under West Virginia law, an attorney who is court appointed to represent a criminal defendant in a federal criminal prosecution is immune from purely state law claims of legal malpractice stemming from the underlying criminal proceedings?

Answer: Yes ____ No __X__

Upon review of the parties' briefs, arguments, and the record, we answer the third certified question in the affirmative. Because of our answer to the third certified question, the first two certified questions are moot.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case has its origins in the criminal prosecution of Mr. Mooney by the federal government. The underlying facts of the federal criminal prosecution were set out in an opinion by the Fourth Circuit Court of Appeals in *United States v. Mooney*, 497 F.3d 397 (4th Cir.2007). The facts set out in the *Mooney* opinion are as follows:

In the early morning hours of August 4, 2002, at approximately 2:00 a.m., John Mooney returned home from his job at Whisman's Bar, a bar seven blocks away. Home for Mooney was apparently the house he shared with his ex-wife, Florencia "Sandy" McCloud. After fixing himself dinner, he retired to the master bedroom, sat on the bed, and began to eat his meal. At that point, McCloud retrieved a .38 caliber revolver from a lockbox under her side of the bed and placed the end of its barrel against the side of Mooney's head, near the temple. Mooney knew that McCloud had been drinking that night and that she had a propensity to brandish and shoot guns at the men in her life. McCloud had pulled a gun on Mooney before, had fired a gun at a boyfriend once, and had fired at and actually hit a different ex-husband with the very same gun whose barrel was touching the side of Mooney's head. Mooney stated he was "scared," and he twirled around and grabbed the gun from McCloud's grasp.

Mooney hurriedly stood up and called his boss Terry Whisman at Whisman's Bar to say that his ex-wife had pulled the gun on him again and that he was bringing it in to hand it over to the police. Before Mooney could leave, however, McCloud angrily demanded the return of the gun and threatened to call the police if Mooney did not return it. Instead of giving the gun back, Mooney himself called 911, but McCloud disconnected the call. Mooney called 911 again, and McCloud again disconnected the call. The transcripts of these two aborted 911 calls, however, recount the verbal fight then ensuing between Mooney and McCloud. McCloud repeatedly told Mooney that he was going to jail, and Mooney responded, "I'm not worried about going to jail. You're losing your gun. You'll never pull it on me again."

Unsuccessful in his efforts to call a 911 operator from the house, Mooney departed for Whisman's Bar according to his original plan to hand the gun over to the police there. As Mooney left the house, McCloud attacked him, ripping off his shirt. Immediately after Mooney departed, McCloud called 911 and reported that Mooney possessed her handgun and was headed for Whisman's Bar.

Mooney walked the seven blocks to Whisman's Bar with the handgun in his

pocket. When he arrived, the bar was locked, but Whisman let him in. As Mooney reached for the telephone in order to call 911, Whisman informed him that it was unnecessary to do so because the police were already outside. Mooney then walked out of the bar with his hands in the air, and the police took the gun from his pocket and arrested him without incident.

Mooney was charged in a single-count indictment for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1). Even though Mooney insisted that he was innocent of the charge in the circumstances, he pleaded guilty because his appointed counsel [Mr. Frazier] advised him that there was no defense to a felon-in-possession charge.

At his sentencing hearing on May 12, 2003, Mooney sought to withdraw his guilty plea on the basis that he "did something that was right" and was innocent of the charge. But Mooney's counsel expressed his disagreement with Mooney and advised the court that "the elements of this [felon-in-possession] offense [do not] allow for us to make that [justification] argument in front of the jury." The district court denied Mooney's request to withdraw his guilty plea, reasoning that once Mooney walked out of the house with the gun, he "committed a crime" for which there was no justification, "even though [he had] a good reason to take the gun from [McCloud] in the first place." The court denied Mooney's motion to withdraw his plea and sentenced Mooney to 180 months' imprisonment. On direct appeal, we affirmed, holding in a brief opinion that the district court had not abused its discretion in refusing to permit Mooney to withdraw his plea.

Mooney timely filed a motion under 28 U.S.C. § 2255, seeking to vacate his conviction and sentence based on a claim of ineffective assistance of counsel. He asserted that he pleaded guilty due to counsel's erroneous advice that his charge under 18 U.S.C. § 922(g) was not subject to a justification defense. If he had known of the possibility of a defense, Mooney claimed, he would not have pleaded guilty

and would have insisted on proceeding to trial. He also claimed that he likely would have succeeded at trial in persuading the court to submit the justification defense to the jury and in convincing the jury of the defense.... The district court denied Mooney's § 2255 motion, holding that counsel's failure to research the defense of justification was not unreasonable professional assistance because Mooney's "continued possession of the weapon after leaving the home negate[d] his possible defense[.]"

*Mooney*, 497 F.3d at 401 (internal citations omitted). Mr. Mooney appealed the denial of his federal habeas petition. In an opinion that was decided on August 6, 2007, the Fourth Circuit found that Mr. Mooney had established a basis for habeas relief as follows:

Based on the record made in connection with the § 2255 motion, we conclude that in connection with Mooney's guilty plea, Mooney's counsel provided ineffective assistance of counsel, and but for that assistance, Mooney would not have pleaded guilty. We also conclude that if Mooney were able to present the same facts at trial, the trial court would be required, under the criteria [of our precedents], to submit a justification defense to the jury and that the jury would likely consider it favorably. Accordingly, we reverse the district court's order denying Mooney's § 2255 motion, vacate the judgment of conviction and sentence entered against Mooney on May 13, 2003, and remand the case to permit Mooney to withdraw his guilty plea.

*Mooney*, 497 F.3d at 399.

After the case was remanded, the federal government declined to reprosecute Mr. Mooney. Therefore, the case was dismissed. It appears that Mr. Mooney had served over five years imprisonment before the felony charge was dropped and the case dismissed.

Subsequent to Mr. Mooney's release from prison he filed a civil action against Mr. Frazier in federal district court on April 10,

2008.[1] By an order entered November 18, 2008, the federal district court dismissed the action against Mr. Frazier on the grounds of lack of subject matter jurisdiction.

After Mr. Mooney's federal civil case was dismissed, he filed the instant action against Mr. Frazier on December 9, 2008. The complaint alleged various theories of liability against Mr. Frazier including legal malpractice. All of the liability theories were premised upon Mr. Frazier's ineffective of assistance of counsel in the federal criminal prosecution of Mr. Mooney.

On January 9, 2009, Mr. Frazier filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The motion was based upon immunity and the statute of limitations. Prior to ruling on the motion to dismiss, the circuit court certified the aforementioned three questions to this Court.

## II.

### STANDARD OF REVIEW

In this proceeding we are called upon to respond to certified questions from the circuit court. We have held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" Syl. pt. 1, *Gallapoo v. Wal–Mart Stores, Inc.,* 197 W.Va. 172, 475 S.E.2d 172 (1996). To the extent we must interpret statutes, our cases have made clear that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't,* 195 W.Va. 573, 466 S.E.2d 424 (1995).

## III.

### DISCUSSION

Although the circuit court certified three questions, we need only address one of those questions. The question which we consider dispositive is:

**1.** Mr. Mooney named other defendants in the action who were ultimately dismissed from the case.

Whether, under West Virginia law, an attorney who is court appointed to represent a criminal defendant in a federal criminal prosecution is immune from purely state law claims of legal malpractice stemming from the underlying criminal proceedings?

This question presents an issue of first impression for this Court. To resolve this issue we will examine it in three contexts. First, we will examine the issue of immunity for court appointed criminal defense attorneys under the Public Defender Services Act of 1989, W. Va.Code § 29–21–1, et seq. (1989). Second, we will determine whether immunity exists under federal law. Third, we will examine the issue in the context of judicially created immunity for court appointed attorneys.

### A. The Public Defender Services Act of 1989

The Public Defender Services Act of 1989 (hereinafter the Acts of 1989) sets out procedures for providing indigent persons with access to court appointed counsel in certain legal proceedings.[2] The legal proceedings to which indigents are entitled to court appointed counsel under the Acts of 1989 are:

Criminal [proceedings] which may result in incarceration; juvenile proceedings; proceedings to revoke parole or probation if the revocation may result in incarceration; contempt of court; child abuse and neglect proceedings which may result in a termination of parental rights; mental hygiene commitment proceedings; extradition proceedings; proceedings which are ancillary to an eligible proceeding . . .; and appeals from or post-conviction challenges to the final judgment in an eligible proceeding. . . .

W. Va.Code § 29–21–2(2) (1996).

 The Acts of 1989 also provides court appointed counsel immunity from legal malpractice claims. The following is set out under W. Va.Code § 29–21–20 (1989):

**2.** The Acts of 1989 made substantial amendments to its predecessor, the Public Legal Services Act of 1981.

Any attorney who provides legal representation under the provisions of this article under appointment by a circuit court or by the supreme court of appeals, and whose only compensation therefor is paid under the provisions of this article, shall be immune from liability arising from that representation in the same manner and to the same extent that prosecuting attorneys are immune from liability.

Although W. Va.Code § 29–21–20 is quite specific regarding immunity from liability for attorneys appointed by a *circuit court* or this *Court*, the statute is silent as to attorneys appointed by *federal district courts* situate in this State.[3] When faced with such silence, it is the obligation of this Court to ascertain, as best we can, the intent of the legislature in enacting the statute in question:

It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.

Syl. pt. 3, *Powell v. Wood County Commission*, 209 W.Va. 639, 550 S.E.2d 617 (2001), quoting Syl. pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E. 194 (1925). We have also held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959). *See* Syl. pt. 1, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent.").

We have squarely addressed the application of W. Va.Code § 29–21–20 in only one previous case. The case in question was *Powell v. Wood County Commission*, 209 W.Va. 639, 550 S.E.2d 617 (2001).[4]

In *Powell* an attorney in the law firm of Powell Law Offices (hereinafter the Law Firm) was appointed by a circuit court to represent Luly Bell Parkins in a dispute over her parental rights. Ms. Parkins was not pleased with the outcome of the litigation, so she sued her appointed counsel in federal court.[5] The Law Firm, as employer of the attorney, sought to have the insurance carrier for the Wood County Commission provide a defense in the case. The insurance carrier refused to provide legal representation. Eventually the federal court dismissed Ms. Parkins' law suit. Thereafter, the Law Firm filed suit against the Wood County Commission, seeking a writ of mandamus to compel indemnification for the costs of defending the malpractice suit. The circuit court denied relief and dismissed the case.

---

**3.** The immunity protection afforded by W. Va. Code § 29–21–20 was the subject of comment in a recent law review article:

Because West Virginia does not demand private attorneys to serve as counsel for indigent parties, the state relies on private attorneys to volunteer for such service. The reason for granting absolute immunity is therefore intuitive. To encourage private attorneys to volunteer and, in turn, to maintain adequate pools of willing and ready private attorneys, West Virginia protects them from being personally liable for suits arising during the course of such representation.

Boyd M. Mayo, "Monetary Liability for Involuntary Servitude?: South Carolina Needs to Abandon the Negative Incentive Approach and Grant Absolute Immunity to Indigent Criminal Defense Attorneys Appointed under Rule 608," 3 Charleston L.Rev. 709, 725 (2009).

**4.** In the case of *Estate of Robinson ex rel. Robinson v. Randolph County Com'n*, 209 W.Va. 505, 549 S.E.2d 699 (2001) an attorney was sued by the estate of a defendant the attorney was appointed to represent in a criminal case. The defendant committed suicide prior to trial. The defendant's estate partially blamed the attorney for the suicide. The circuit court granted summary judgment in favor of the attorney because of the immunity provided to the attorney under W. Va.Code § 29–21–20. This Court, without addressing the merits of the appeal, reversed and remanded the case with instructions to the trial court to set out findings of fact and conclusions of law in its summary judgment order.

**5.** There were others named as defendants in the case.

In *Powell* this Court examined the language of W. Va.Code § 29–21–20, and determined that "the statute is silent as to the appointed attorney's immunity from the costs of defending any suit." *Powell,* 209 W.Va. at 642, 550 S.E.2d at 620. Even though the statute was silent on the issue of recovering costs, this Court found that the legislature implicitly intended to allow appointed counsel to recover the costs in defending a legal malpractice claim:

We note that the hourly compensation paid by the state for representation of indigent parties is not highly remunerative. While some attorneys may specialize in such cases and find them rewarding, all face a limited financial recovery for this serious and demanding work. It may be that part of the reason attorneys take such cases is that our law protects them from personal liability. However, if the immunity offered by W. Va.Code § 29–21–20 (1989) does not also protect the attorney from expenses incurred in defending a malpractice suit, then the appointed attorney may face enormous financial uncertainty. Because of the challenges we already face in attracting competent attorneys to the appointed defense of indigent clients, we wish to take no action that might further discourage members our bar from taking such cases.

. . . .

The Legislature was extremely specific in placing appointed counsel on the same footing with prosecuting attorneys with respect to immunity from liability. . . .

Because a prosecuting attorney sued for performing his or her official duties does not bear the cost of his or her defense, any grant of immunity to appointed counsel would be cold comfort without the same protection. Thus we find that the immunity from liability contained in W. Va.Code § 29–21–20 (1989) implicitly indemnifies appointed counsel for any costs incurred in the defense of any suit arising out of the appointed representation.

*Powell,* 209 W.Va. at 642–643, 550 S.E.2d at 620–621.[6]

In addition to finding that an attorney appointed under the Acts of 1989 could recover the costs of defending against a legal malpractice claim, the *Powell* decision also set out the following holding in syllabus point 5 of the opinion:

When a court appoints a private attorney to represent a client pursuant to W. Va.Code § 29–21–1, *et seq.,* and that client then sues the attorney for malpractice in connection with that representation, the attorney shall be immune from liability arising from that representation in the same manner and to the same extent that prosecuting attorneys are immune from liability.

Syl. pt. 5, *Powell.*

■ In the instant proceeding Mr. Frazier contends that, for public policy reasons, this Court should find that W. Va.Code § 29–21–20 implicitly includes immunity for private attorneys appointed by federal district courts. Specifically, Mr. Frazier argues "that the ends of justice and logic dictate that it is in the best interests of the citizens of West Virginia, in particular indigent criminal defendants in West Virginia, to declare that criminal defense attorneys . . . are immune from claims of legal malpractice asserted by indigent criminal defendants stemming from a court appointed criminal legal representation in federal court."

On the other hand, Mr. Mooney relies upon the plain language of the Acts of 1989 to argue that W. Va.Code § 29–21–20 should not be extended to include immunity for private attorneys appointed by federal district courts. First, Mr. Mooney points out that the Acts of 1989 expressly states that "[l]egal representation provided pursuant to the provisions of this article is limited to the court system of the state of West Virginia[.]" W. Va.Code § 29–21–2(2). Under that provision Mr. Mooney contends that federal courts are not part of the state court system of West Virginia. Second, Mr. Mooney argues that W. Va.Code § 29–21–20 expressly limits its

---

**6.** The opinion went on to order the Wood County Commission indemnify the Law Firm for the cost of its defense in the legal malpractice case.

immunity to attorneys who are (1) appointed by circuit courts or this Court, (2) under the Acts of 1989, and (3) are compensated under the Acts of 1989. Mr. Mooney further asserts that Mr. Frazier was not appointed to represent him by a circuit court or this Court; the appointment was not made under the Acts of 1989; and Mr. Frazier's legal services were not compensated under the Acts of 1989.

While it is true that in *Powell* this Court extended the immunity under W. Va.Code § 29–21–20 to include the recovery of costs by an attorney, when there was no express language in the statute providing the same, we are hesitant to extend the statute's general immunity to private attorneys appointed by federal courts. Our hesitancy is grounded not only because of the Acts of 1989's silence on this issue; is also in view of a specific change made in the Acts of 1989 which did not exist in its predecessor, the Public Legal Services Act of 1981. Under the Acts of 1981, immunity from a legal malpractice action was contained in W. Va. Code § 29–21–21 (1981). Pursuant to that statute, immunity was only granted to attorneys appointed by the circuit court. However, under the Acts of 1989 the legislature removed the immunity provision out of W. Va.Code § 29–21–21 and placed it in W. Va. Code § 29–21–20. In doing so, the legislature enacted W. Va.Code § 29–21–20 so as to extend immunity to attorneys appointed by this Court, as well as circuit courts. Insofar as the Acts of 1989 specifically *included* immunity for attorneys appointed by this Court, we are not inclined to find that the legislature implicitly intended to provide immunity for attorneys appointed by federal courts. If such an intent existed, the legislature could have and should have expressed it when it included appointment of attorneys by this Court under the Acts of 1989. *See* Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Consequently, we find, and so hold, that W. Va.Code § 29–21–20 (1989) does not provide immunity from legal malpractice for attorneys appointed by federal courts to represent indigent defendants.

### B. Immunity under Federal Law

As previously indicated, Mr. Frazier was appointed by a federal district judge to represent Mr. Mooney. Appointment of attorneys for indigent criminal defendants in federal court is done pursuant to the Criminal Justice Act of 1964, 18 U.S.C.A. § 3006A (2008). *See United States v. Fincher,* 593 F.3d 702, 705 (8th Cir.2010) ("The Criminal Justice Act establishes the framework for ensuring that individuals who are financially unable to afford defense counsel are provided counsel as required by the Sixth Amendment. A person is eligible for court appointed counsel if, after an appropriate inquiry, the court is satisfied that the person is 'financially unable to obtain counsel.' The defendant bears the burden of establishing that he or she is financially unable to obtain counsel, but financial inability to pay does not mean indigence or destitution."). Under the Criminal Justice Act federal criminal defendants may be appointed counsel from a Federal Public Defender Office, nonprofit legal organizations or private attorneys. *See Rosenfield v. Wilkins,* 280 Fed.Appx. 275, 277 (4th Cir.2008) ("The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, ... contemplates that, in a 'substantial proportion' of cases under the Act, private attorneys will accept the courts' appointment, though bar associations and other organizations may supply counsel as well.").

■ The issue of immunity from legal malpractice for an attorney appointed by a federal judge is handled differently, depending upon whether the attorney is employed by a Federal Public Defender Office or is a private attorney. It has been recognized that "Congress ... create[d] immunity for federal public defenders appointed pursuant to 18 U.S.C. § 3006A(g)(2)(A)[.]" *Sullivan v. United States,* 21 F.3d 198, 203 (7th Cir. 1994), *cert. denied,* 513 U.S. 1060, 115 S.Ct. 670, 130 L.Ed.2d 604 (1994). *See In re Levenson,* 587 F.3d 925, 935 n. 7 (9th Cir.2009) ("Attorneys employed by Federal Public Defender Organizations are employees of the judicial branch."). Any action for legal mal-

practice against a federal public defender must be brought directly against the United States and not the attorney. *See Abuhouran v. Fletcher Allen Healthcare,* 2009 WL 1834316, *6 (D.N.J.2009) ("Federal agencies and employees may not be sued under the [Federal Tort Claims Act]; the United States is the only proper defendant."). In other words, under federal law, an attorney employed by a Federal Public Defender Office who is "sued in an individual capacity [can] convert the action to one against the United States, thereby obtaining indirectly the benefit of the United States' sovereign immunity." *Winters v. Taylor,* 333 Fed. Appx. 113, 116 (7th Cir.2009). The issue of whether immunity exists under federal law, in an action for legal malpractice against a private attorney appointed by a federal judge to represent a defendant, was addressed by the United States Supreme Court in *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979).

The underlying facts of *Ferri* indicate that the plaintiff was indicted by a federal grand jury for the Western District of Pennsylvania on charges of conspiring to construct and use a bomb in violation of various federal statutes. The federal district court judge appointed a private attorney to represent the plaintiff. A jury ultimately convicted the plaintiff. While the criminal case was pending on appeal, the plaintiff filed a legal malpractice action against the attorney in a Pennsylvania state court.[7] The state trial court dismissed the case. The Pennsylvania Supreme Court affirmed. In doing so, the Pennsylvania Supreme Court held that under federal law the attorney had absolute immunity from a legal malpractice action. The United States Supreme Court granted certiorari in the case to decide whether federal law provided immunity to the attorney.

Prior to addressing the merits of the issue, the Court in *Ferri* pointed out the limitations of its decision:

> The narrow issue presented to this Court is whether federal law in any way pre-empts the freedom of a State to decide

the question of immunity in this situation in accord with its own law. We are not concerned with the elements of a state cause of action for malpractice and need not speculate about whether a state court would consider petitioner's allegations sufficient to establish a breach of duty or a right to recover damages. Nor are we concerned with the question whether Pennsylvania may conclude as a matter of state law that respondent is absolutely immune. For when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.

*Ferri,* 444 U.S. at 197–198, 100 S.Ct. at 406. The opinion in *Ferri* then went on to hold that federal law did not provide immunity to a private attorney appointed by a federal judge in a criminal case:

> ... [T]he primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serves pursuant to statutory authorization and in furtherance of the federal interest in insuring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation. The fear that an unsuccessful defense of a criminal charge will lead to a malpractice claim does not conflict with performance of that function. If anything, it provides the same incentive for appointed and retained counsel to perform that function competently. The primary rationale for granting immunity to judges, prosecutors, and other public officers does not apply to defense counsel sued for malpractice by his own client.
>
> It may well be true, as respondent argues, that valid policy reasons might justify an immunity for appointed counsel that

---

7. The criminal appeal had not been resolved by the time the civil case reached the United States

Supreme Court.

need not be accorded to privately retained counsel. Perhaps the most persuasive reason for creating such an immunity would be to make sure that competent counsel remain willing to accept the work of representing indigent defendants. If their monetary compensation is significantly less than that of retained counsel, and if the burden of defending groundless malpractice claims and charges of unprofessional conduct is disproportionately significant, it is conceivable that an immunity would be justified by the need to preserve the supply of lawyers available for this important work.... [W]e do not, [however], evaluate those arguments. Having concluded that the essential office of appointed defense counsel is akin to that of private counsel ... the federal officer immunity doctrine ... is simply inapplicable in this case. Accordingly, ... we hold that federal law does not now provide immunity for court-appointed counsel in a state malpractice suit brought by his former client.

*Ferri*, 444 U.S. at 204–205, 100 S.Ct. at 409–410 (internal citations omitted). *See Tower v. Glover*, 467 U.S. 914, 923, 104 S.Ct. 2820, 2826, 81 L.Ed.2d 758 (1984) ("We conclude that state public defenders are not immune from liability under [42 U.S.C.] § 1983 for intentional misconduct, 'under color of' state law, by virtue of alleged conspiratorial action with state officials that deprives their clients of federal rights.").

Under the decision in *Ferri*, an attorney appointed by a federal court to represent an indigent defendant in a criminal case, is not immune under federal law from a state cause of action for legal malpractice. In other words, under the *Ferri* decision Mr. Frazier has no federal immunity from Mr. Mooney's state cause of action for legal malpractice.

### C. Judicially Created Immunity for Court Appointed Attorneys

■ The decision in *Ferri* is instructive on two issues. First, *Ferri* is clear in holding that federal law does not provide immunity, for a state cause of action for legal malpractice, to an attorney appointed to represent a defendant in a federal criminal case. Second, and perhaps most importantly, *Ferri* made clear that "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity[.]" *Ferri*, 444 U.S. at 198, 100 S.Ct. at 406. *See Thorp v. Strigari*, 155 Ohio App.3d 245, 800 N.E.2d 392, 399 (2003) ("[T]he United States Supreme Court has declined to hold that federal law provides immunity for counsel in state malpractice suits, leaving the issue to the states to resolve.").

Our research has revealed that the majority of states permit legal malpractice actions against attorneys appointed to represent criminal defendants.[8] Only a small minority of states have statutes that provide immunity to attorneys appointed to represent indigent criminal defendants.[9] The statutes in those

---

**8.** *See Mylar v. Wilkinson*, 435 So.2d 1237 (Ala. 1983); *Shaw v. Public Defender Agency*, 816 P.2d 1358 (Alaska 1991); *Rose v. Hudson*, 153 Cal. App.4th 641, 63 Cal.Rptr.3d 248 (2007); *Pearson v. Sublette*, 730 P.2d 909 (Colo.App.1986); *Johnson v. Gibson*, 837 So.2d 481 (Fla.App.2002); *Herron v. Mixon*, 157 Ga.App. 224, 276 S.E.2d 893 (1981); *Trobaugh v. Sondag*, 668 N.W.2d 577 (Iowa 2003); *Canaan v. Bartee*, 276 Kan. 116, 72 P.3d 911 (2003); *Law v. Mayeux*, 527 So.2d 37 (La.App.1988); *Fleming v. Gardner*, 658 A.2d 1074 (Me.1995); *Donigan v. Finn*, 95 Mich.App. 28, 290 N.W.2d 80 (1980); *Smith v. Sneed*, 638 So.2d 1252 (Miss.1994); *Johnson v. Raban*, 702 S.W.2d 134 (Mo.App.1985); *Delbridge v. Office of Public Defender*, 238 N.J.Super. 288, 569 A.2d 854 (N.J.Super.L.1989) (non-criminal case); *Snyder v. Baumecker*, 708 F.Supp. 1451 (D.N.J. 1989) (applying New Jersey law); *Britt v. Legal Aid Soc., Inc.*, 95 N.Y.2d 443, 718 N.Y.S.2d 264, 741 N.E.2d 109 (2000); *Stevens v. Bispham*, 316 Or. 221, 851 P.2d 556 (1993); *Moore v. McCom-*

*sey*, 313 Pa.Super. 264, 459 A.2d 841 (1983); *Peterson v. White*, 877 S.W.2d 62 (Tex.App.1994); *Taylor v. Davis*, 265 Va. 187, 576 S.E.2d 445 (2003); *Powell v. Associated Counsel for Accused*, 125 Wash.App. 773, 106 P.3d 271 (2005).

**9.** *See Watson v. Pieszak*, 98 Conn.App. 333, 908 A.2d 1115 (2006) (construing the immunity statute Conn.Gen.Stat. Ann. § 4–165); *Ramirez v. Harris*, 105 Nev. 219, 773 P.2d 343 (1989) (construing the immunity statute Nev.Rev.Stat. § 41.032); *Coyazo v. State*, 120 N.M. 47, 897 P.2d 234 (N.M.App.1995) (construing the immunity statute N.M. Stat. Ann. § 31–16–10); *Osborne v. Goodlett*, 2005 WL 1713868 (Tenn.App. 2005) (construing the immunity statute Tenn. Code Ann. § 8–14–209). At least four courts have extended general governmental immunity statutes to court appointed public defenders. *See Browne v. Robb*, 583 A.2d 949 (Del.1990); (construing the general immunity statute 10 Del.Code

states, like West Virginia, do not expressly extend immunity to attorneys appointed by federal courts. Moreover, we have not found any case, from the states with immunity statutes, that has addressed the issue of providing immunity for attorneys appointed by federal courts. However, at least one court has created immunity for attorneys appointed to represent indigents. The Minnesota Supreme Court created such immunity in *Dziubak v. Mott*, 503 N.W.2d 771 (Minn.1993).

The underlying facts of *Dziubak* show that the state of Minnesota charged the plaintiff with second degree murder and first degree manslaughter in causing the death of his mother. Two public defenders were appointed to represent the plaintiff. The plaintiff eventually pleaded guilty to one count of second degree manslaughter and was sentenced to prison. After serving 15 months of his sentence, the plaintiff sought to withdraw his guilty plea based upon the discovery of evidence which showed that his mother may have died because of self-inflicted fatal doses of anti-depressants. As a result of this evidence, the plaintiff was allowed to withdraw his guilty plea. The plaintiff was subsequently tried and acquitted of murder.

After his acquittal, the plaintiff in *Dziubak* filed a legal malpractice action against his original court appointed attorneys. The attorneys filed a motion to dismiss the complaint, in part, on the grounds that they had immunity. The trial court rejected the immunity defense. This issue was appealed to the state's mid-level appellate court, where it was affirmed. The Minnesota Supreme Court granted an appeal and reversed. In doing so, the Court in *Dziubak* created legal malpractice immunity for attorneys appointed to represent indigent defendants:

Today we are asked to decide whether the state public defenders are immune from suit for malpractice....

....

Because we find there are sound public policy reasons favoring immunity, we reverse and hold that public defenders are immune from suit for legal malpractice.

....

The United States Supreme Court left the question of immunity to the states to decide when it declined to hold that federal law provides immunity for counsel in state malpractice suits [in] *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). The Court noted that valid public policy reasons may justify such a grant of immunity.

....

Historically, we have extended immunities to participants within the judicial system.

....

Most recently, we held that a guardian ad litem is absolutely immune in a negligence claim for actions performed within the scope of her or his duties.

....

Like a guardian ad litem, the public defender is appointed to protect the best interests of her or his client and must be free to exercise independent, discretionary judgment when representing the client without weighing every decision in terms of potential civil liability.

We recognize that privately retained defense counsel must also exercise independent discretion in the defense of her or his clients, and are not immune from legal malpractice claims. However, there are significant differences between private counsel and public defenders which require the extension of immunity to public defenders.

....

[P]rivate defenders are limited only by what the client is able to pay. The funds available to the client usually serve to prevent the presentation of frivolous claims,

§ 4001); *Johnson v. Halloran*, 312 Ill.App.3d 695, 245 Ill.Dec. 408, 728 N.E.2d 490 (2000) (declining to apply 745 Ill. Comp. Stat. 19/5 § 5 because it was not in effect when malpractice occurred); *Wright v. Elston*, 701 N.E.2d 1227 (Ind.App.1998) (construing the general immunity statute Ind.Code § 34–6–2–38); *Thorp v. Strigari*, 155 Ohio App.3d 245, 800 N.E.2d 392 (2003) (construing the general immunity statute Ohio Rev.Code § 2744.03); *Bradshaw v. Joseph*, 164 Vt. 154, 666 A.2d 1175 (1995) (construing the general immunity statute 3 Vt. Stat. Ann. § 1101).

tactics or defenses. There is no similar "brake" in the public defender-client relationship since the state, rather than the client, pays the attorney.

. . . .

The office of the public defender does not have sufficient funds to represent each client assigned to it in the way each client might demand to be served. An increasing crime rate and an economic climate which has resulted in increased claims of indigency and lower state budgets to fund government positions have caused public defender caseloads to grow dramatically.

We believe that if the public defender is not immune from liability, the cost and burden of defending civil claims will only exacerbate this situation. In the end, this would hurt indigent defendants, not help them.

The indigent defendant who thinks the court-appointed attorney was negligent is not without remedies through the appeal process and motions for post-conviction relief and habeas corpus.

It would be an unfair burden to subject the public defender to possible malpractice for acts or omissions due to impossible caseloads and an under-funded office: something completely out of the defender's control.

. . . .

We, like the United States Supreme Court, recognize the essential role performed by the defendant's attorney within our adversarial system of justice. This role is no less important when performed by counsel appointed to represent an indigent accused of a crime. If defense were available only to those of means, there would be no justice at all. Rather, an adequate defense must be available to all criminal defendants, and must be provided to those who do not have resources to obtain counsel by their own means.

. . . .

Since justice demands that a defense be provided to criminal defendants who are not able to afford privately retained counsel, it is essential that a sufficient number of qualified attorneys be willing and able to provide this defense. Immunity will aid in the continued recruitment of attorneys to perform this service in our criminal justice system; such service is eagerly sought by most attorneys. The accused defendant is not the sole beneficiary. Society as a whole depends upon the role of defense counsel to secure an ordered system of liberty and justice, as ordained by our Constitution.

*Dziubak*, 503 N.W.2d at 773–77 (most internal citations omitted). *See Office of State Attorney v. Parrotino*, 628 So.2d 1097 (Fla. 1993) (creating immunity for state attorneys).

■ Although *Dziubak* created immunity for public defenders, we are inclined to adopt and extend its reasoning in order to provide legal malpractice immunity for private attorneys appointed to represent indigent defendants by federal courts sitting in this state.[10]

---

**10.** This Court has previously recognized civil litigation immunity when no statute provided for such immunity. *See Wilson v. Bernet*, 218 W.Va. 628, 635, 625 S.E.2d 706, 713 (2005) (holding that "an adverse expert witness enjoys civil immunity for his/her testimony and/or participation in judicial proceedings where such testimony and/or participation are relevant to said judicial proceedings."); *Parkulo v. West Virginia Bd. of Probation and Parole*, 199 W.Va. 161, 179, 483 S.E.2d 507, 525 (1996) (holding that "the Board of Probation and Parole, being a quasi-judicial body, is entitled to absolute immunity from tort liability for acts or omissions in the exercise of its judicial function[.]"); *Clark v. Dunn*, 195 W.Va. 272, 278–79, 465 S.E.2d 374, 380–81 (1995) (holding that "the doctrine of qualified or official immunity bars a claim of mere negligence against the Department of Natural Resources, a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va.Code § 29–12A–1, *et seq.*, and against ... an officer of that department acting within the scope of his employment, with respect to the discretionary judgments, decisions[.]"); *Goines v. James*, 189 W.Va. 634, 640, 433 S.E.2d 572, 578 (1993) (holding "that under the doctrine of qualified immunity, a police officer is absolved from civil liability for following a misdemeanant in hot pursuit into the residence of a third party, with neither a warrant nor the permission of the third party, in order to effect a warrantless arrest of the misdemeanant, so long as such entry violates no clearly established statutory or constitutional rights."); *State v. Chase Securities, Inc.*, 188 W.Va. 356, 364–65, 424 S.E.2d 591, 599–600 (1992) ("[A] public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va.Code, 29–12A–1, *et seq.*, is entitled to

Several reasons guide our decision on this issue. First, we are deeply troubled by the fact that federal law provides immunity from legal malpractice for lawyers appointed from the Federal Public Defender Office to represent indigent defendants, but no such federal protection is provided to private lawyers in this state who are appointed by federal judges to represent indigent defendants. In contrast, our legislature has seen the wisdom to provide immunity to attorneys under W. Va.Code § 29–21–20, regardless of whether the attorney is a public defender or a private attorney. Second, we are concerned about the negative impact on the quality and number of attorneys, who would agree to accept appointment by federal courts to represent indigents, if such attorneys were subject to unbridled legal malpractice claims. We have

little doubt that, without immunity, the lawyers in this state who represent indigent defendants in federal courts would be inundated with baseless claims of legal malpractice.[11]

Consequently, we hold that an attorney appointed by a federal court to represent a criminal defendant, in a federal criminal prosecution in West Virginia, has absolute immunity from purely state law claims of legal malpractice that derive from the attorney's conduct in the underlying criminal proceedings.[12]

To summarize, we find that an attorney appointed to represent a defendant in a federal criminal prosecution is immune from liability for legal malpractice stemming from such appointment and representation.[13]

---

qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.").

11. We will also note that the Fourth Circuit Court of Appeals Further has identified policy reasons for making court appointed counsel immune from legal malpractice suits:

(a) the need to recruit and hold able lawyers to represent indigents both full and part-time public defenders, as well as private practitioners appointed by courts to represent individual defendants or litigants, and (b) the need to encourage counsel in the full exercise of professionalism, I. e., the unfettered discretion, in the light of their training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a single litigant as to how best his interests may be advanced.

*Minns v. Paul,* 542 F.2d 899, 901 (4th Cir.1976). *See Walker v. Kruse,* 484 F.2d 802, 804 (7th Cir.1973) ("[T]here are strong reasons of policy ... to hold that a lawyer, who has been appointed ... in the defense of an indigent citizen accused of crime, should be immune from malpractice liability. Requiring such lawyers to defend charges such as this can only make it more difficult for the Bar to discharge its professional responsibilities[.]").

12. We have determined that the immunity should be absolute, in order to extend the same degree of immunity that is provided under W. Va.Code § 29–21–20 for attorneys appointed by our circuit courts and this Court. As previously noted in this opinion, the immunity granted to attorneys under W. Va.Code § 29–21–20 is the same as that which prosecutors enjoy under the com-

mon law. Regarding common law prosecutorial immunity, the following has been said:

Prosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process. ... It has been said that absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding.

The absolute immunity afforded to prosecutors attaches to the functions they perform, and not merely to the office. Therefore, it has been recognized that a prosecutor is entitled only to qualified immunity when performing actions in an investigatory or administrative capacity.

Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure,* § 8(c), at 213 (3d ed.2008). *See Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (extending absolute immunity to prosecutors from civil rights claims); *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (state prosecutor denied absolute immunity in suit that involved job functions that were investigatory rather than prosecutorial in nature and thus were not performed in the role as advocate for the state).

13. During oral arguments counsel for Mr. Mooney suggested that any decision by this Court, that may be adverse to his client, not apply retroactive. We reject this request. *See Caperton v. A.T. Massey Coal Co., Inc.,* 225 W.Va. 128, 156, 690 S.E.2d 322, 350 (2009) ("The Supreme Court of Appeals of West Virginia, like all courts in the country, adheres to the common law prin-

Therefore, we answer the third certified question in the affirmative. In light of our answer to the third certified question, we find it unnecessary to answer the remaining certified questions. Accordingly, we conclude that the first and second certified questions are moot.

## IV.

## CONCLUSION

After considering each of the certified questions from the Circuit Court of Cabell County, we respond as follows:

1. Whether the statute of limitations on a legal malpractice action stemming from the defense of a criminal defendant begins to run when the criminal defendant files a habeas corpus petition claiming that he suffered ineffective assistance of counsel in the underlying criminal proceedings?

Answer: Moot.

2. Is a criminal defendant collaterally estopped from filing a civil legal malpractice claim against his attorney until the underlying criminal conviction is overturned?

Answer: Moot.

3. Whether, under West Virginia law, an attorney who is court appointed to represent a criminal defendant in a federal criminal prosecution is immune from purely state law claims of legal malpractice stemming from the underlying criminal proceedings?

Answer: Yes.

Certified questions answered.

ciple that, '[a]s a general rule, judicial decisions are retroactive in the sense that they apply both to the parties in the case before the court and to all other parties in pending cases.' *Crowe v. Bolduc*, 365 F.3d 86, 93 (1st Cir.2004).").