IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0111

_____

FILED

November 8, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

NORM LAUNI, II,
Plaintiff Below, Petitioner

v.

THE HAMPSHIRE COUNTY PROSECUTING ATTORNEY'S OFFICE and COUNTY
OF HAMPSHIRE, WEST VIRGINIA, et al.,
Defendants Below, Respondents

_____

Appeal from the Circuit Court of Mineral County
The Honorable James Courrier, Jr.
Case No. 19-C-15

AFFIRMED

_____

Submitted: October 10, 2023
Filed:  November 8, 2023

Christian J. Riddell, Esq.
The Riddell Law Group
Martinsburg, WV
Counsel for Petitioner

Tracey B. Eberling, Esq.
Steptoe & Johnson PLLC
Martinsburg, WV
Counsel for Respondent Nazelrod

James W. Marshall, III, Esq.
Adam K. Strider, Esq.
Bailey & Wyant, PLLC
Martinsburg, WV
Counsel for Respondents James and Ours

CHIEF JUSTICE WALKER delivered the opinion of the Court.

JUSTICE BUNN, deeming herself disqualified, did not participate in this decision.

JUDGE TERA SALANGO, sitting by temporary assignment.

SYLLABUS BY THE COURT

1. "'Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syllabus point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syllabus Point 1, *Albright v. White*, 202 W. Va. 292, 294, 503 S.E.2d 860, 862 (1998).

2. "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 530, 236 S.E.2d 207, 208 (1977)

WALKER, Chief Justice:

Petitioner Norm Launi II was working as a Detective with the Hampshire County Sheriff's Department until he was prosecuted in 2017 for domestic battery and domestic assault, of which he was eventually acquitted at trial. He then brought claims of malicious prosecution and civil conspiracy against certain officials involved in his prosecution – Respondents Dan James, John Ours, and Scott Nazelrod – and a claim for abuse of process against Nazelrod. The circuit court dismissed the claims against Respondents James and Ours on the basis of absolute prosecutorial immunity. As to Respondent Nazelrod, it found that Mr. Launi failed to state valid claims of malicious prosecution, abuse of process, or civil conspiracy. On appeal, Mr. Launi challenges all of these rulings as defective, but we concur with the circuit court's findings and affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mr. Launi's allegations of civil conspiracy and malicious prosecution are asserted against three respondents: West Virginia State Police Corporal Scott Nazelrod, special prosecuting attorney John Ours, and Dan James, prosecuting attorney in Hampshire County at all times relevant to our analysis of these claims.[1] Mr. Launi also asserts a claim for abuse of process against Cpl. Nazelrod.

---

[1] Dan James is currently the prosecuting attorney in Morgan County.

The antagonistic relationship between the parties that would later form the basis of these claims began with Mr. Launi's own conduct in November 2013. Mr. Launi and then-fellow Hampshire County law enforcement officials placed a bear carcass in the back of Prosecutor James's truck as a practical joke. Several years after that incident, Prosecutor James accused Mr. Launi of playing a role in the death of his then-partner, Captain Eckerson, despite Prosecutor James's knowledge that Mr. Launi was out of town on scheduled leave at the time.[2] Cpl. Nazelrod became involved when the West Virginia State Police assigned him to investigate the circumstances surrounding Capt. Eckerson's death.

Tensions escalated in January of 2017, when Prosecutor James received a call from Mr. Launi's previous live-in girlfriend, Penny Hartman, alleging that she had video recordings showing Mr. Launi committing domestic violence against her. Mr. Launi alleges that after receiving the call from Ms. Hartman, Prosecutor James "directed" Cpl. Nazelrod to investigate the claims.

In his brief to this Court, Mr. Launi alleges that Prosecutor James filed a petition to revoke Ms. Hartman's bond from a late 2016 DUI charge "in order to force her to pursue charges against the Petitioner for domestic violence." The grounds for revocation

---

[2] It is not entirely clear from the record, but it appears that Captain Eckerson died of a drug overdose.

were that Ms. Hartman had harassed Mr. Launi over the phone and then Mr. Launi pursued charges against her. After her release, Ms. Hartman filed for a domestic violence protective order, and Cpl. Nazelrod allegedly contacted Magistrate John Rohbaugh at home to personally request that the protective order issue. Once it did, Mr. Launi was forced to turn in his weapons and was no longer able to work as a detective with the Hampshire County Sheriff's office.

In February of 2017, as part of his investigation of the domestic violence charges, Cpl. Nazelrod conducted an interview with Mr. Launi regarding the pending domestic violence charges against Ms. Hartman. Mr. Launi denied physical assault of any kind and provided Cpl. Nazelrod with his side of the story. But at some point during that interview, Mr. Launi became aware that Prosecutor James had been the source of information relative to recordings of alleged domestic violence between Mr. Launi and Ms. Hartman.

In the criminal complaint Cpl. Nazelrod filed, Mr. Launi was charged with three counts of domestic battery and one count of domestic assault. Mr. Launi alleges that Cpl. Nazelrod's criminal complaint "made no mention of the Petitioner's statement or any of the information obtained during that interview," and that "much of the evidence claimed to exist in the videos provided by Ms. Hartman was not present." Mr. Launi also claims that he reasonably believed that Prosecutor James drafted the complaint since "it does not

3

follow the standard structure of complaint writing and it appears to have been drafted by an individual with legal training."[3]

Before the case proceeded to trial, the Mineral County Prosecutor recused himself due to a perceived conflict,[4] and Prosecutor Ours was appointed as special prosecutor. According to Mr. Launi, Ms. Hartman repeatedly requested that the domestic battery and assault charges be dismissed, but Prosecutor Ours denied her request. Mr. Launi, having recorded his February interview with Cpl. Nazelrod, also maintains that thirty-six minutes of that interview had been withheld from discovery by Cpl. Nazelrod and the prosecutor respondents.

Mr. Launi argued in his criminal case that the missing portion of the February statement amounted to falsifying evidence. While the court reprimanded Cpl. Nazelrod, it ruled that the parties would proceed to trial and after the State's case-in-chief, denied

---

[3] Although the investigation began in Hampshire County, at some point, Cpl. Nazelrod discovered that the alleged incidents of domestic violence had occurred in Mineral County, so the complaint was filed there instead.

[4] The recused Mineral County prosecutor is not named in the record, nor is there an explanation of the basis for the recusal other than his "previous working relationship" with Mr. Launi.

Petitioner's motion for a judgment of acquittal. After hearing all the evidence against the Petitioner, the jury returned a verdict of not guilty.

Based on these events, Mr. Launi filed this civil action on October 29, 2019, alleging civil conspiracy and malicious prosecution against Prosecutors James and Ours, and intentional infliction of emotional distress claim against Prosecutor James. He also alleges civil conspiracy, malicious prosecution, and abuse of process against Cpl. Nazelrod. Mr. Launi later amended his complaint to add additional factual allegations. All three Respondents filed motions to dismiss the claims, arguing that they were immune as to the alleged conduct or that Mr. Launi failed to state claims for which relief could be granted. The circuit court dismissed all counts as to each Respondent except the intentional infliction of emotional distress claim against Prosecutor James.[5]

Petitioner now appeals the dismissal orders.

---

[5] On April 29, 2019, Petitioner filed a federal court action against multiple defendants, including Respondents Ours, James, and Nazelrod. The allegations in the federal complaint arise from the same arrest and prosecution at issue in this case. All defendants moved to dismiss, and the United States District Court for the Northern District of West Virginia granted the motion to dismiss. Petitioner appealed and the United States Court of Appeals for the Fourth Circuit affirmed the dismissal. *See Launi v. James*, No. 20-2010, 2021 WL 5294933 (4th Cir. Nov. 15, 2021).

## II. STANDARD OF REVIEW

This Court has held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is de novo."[6] We have clarified that when this Court reviews a case de novo, the Court "gives a new, complete and unqualified review to the parties' arguments and the record before the circuit court."[7] And, this Court, like "the trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[8]

Still, although "Rule 8 of the West Virginia Rules of Civil Procedure requires 'only a short and plain statement of the claim showing that the pleader is entitled to relief'"[9] and although "[c]ourts are to construe 'all pleadings … as to do substantial justice,'"[10]

---

[6] Syl. Pt. 1, *Albright v. White*, 202 W. Va. 292, 503 S.E.2d 860 (1998) (quoting Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995)).

[7] *Doe v. Logan Cnty. Bd. of Ed.*, 242 W. Va. 45, 48, 829 S.E.2d 45, 48 (2019) (*quoting Gastar Exploration Inc. v. Rine*, 239 W. Va. 792, 798, 806 S.E.2d 448, 454 (2017)).

[8] Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (citation omitted).

[9] *W. Virginia Div. of Corr. & Rehab. v. Robbins*, 248 W. Va. 515, 889 S.E.2d 88, 96 (2023).

[10] *Id*.

6

Rules 8 and 9(b) do not countenance sloppy pleading; "a plaintiff may not fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint." Instead, they require that "[e]ach averment of a pleading ... be simple, concise, and direct," so that "a circuit court or an opposing party [may] understand whether a valid claim is alleged and, if so, what it is." In other words, a complaint "must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist."[11]

## III. ANALYSIS

Petitioner assigns three errors on appeal, each correlating to the circuit court's dismissal of his malicious prosecution, civil conspiracy, and abuse of process claims. We examine these errors in relation to each Respondent in turn.

### A. Prosecutorial Immunity

The circuit court dismissed Mr. Launi's malicious prosecution and civil conspiracy claims against Prosecutors James and Ours, concluding that those claims were barred by absolute prosecutorial immunity. On appeal, Mr. Launi argues that the Prosecutors James and Ours are not entitled to prosecutorial immunity for their actions in Mr. Launi's prosecution because they were not acting in their prosecutorial capacities in

---

[11] *Id.* (internal citations omitted).

pursuing the domestic violence charges against him that caused him to lose his position as a law enforcement officer.

Absolute prosecutorial immunity attaches to protect prosecutors from civil liability that otherwise would often arise by virtue of the functions they perform for the State: "[p]rosecutors enjoy absolute immunity from civil liability for prosecutorial functions such as, initiating and pursuing a criminal prosecution, presenting a case at trial, and other conduct that is intricately associated with the judicial process[.]"[12]   And, "absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding."[13]

Importantly, this Court has recognized that prosecutorial immunity is a functional analysis.  We have explained, "[t]he absolute immunity afforded to prosecutors attaches to the functions they perform, and not merely to the office.  Therefore, it has been recognized that a prosecutor is entitled only to qualified immunity when performing actions in an investigatory or administrative capacity."[14]   With this background, we turn to

---

[12] *Mooney v. Frazier*, 225 W. Va. 358, 370 n.12, 693 S.E.2d 333, 345 (2010) (citing Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure*, 8(c), at 213 (3d ed. 2008)).

[13] *Id.*

[14] *Id.*

Petitioner's allegations against Prosecutor Ours, then Prosecutor James, to determine whether the conduct on which Mr. Launi's claims is based was prosecutorial in nature.[15]

### 1. *Prosecutor Ours*

The limited role of Prosecutor Ours in Mr. Launi's narrative is prosecuting Mr. Launi for domestic violence against Ms. Hartman. Mr. Launi acknowledges that Prosecutor Ours had authority to prosecute the case against him but argues that Prosecutor Ours orchestrated his appointment in bad faith. Mr. Launi further contends that Prosecutor Ours moved forward with the prosecution with an improper purpose; he alleges that Prosecutor Ours conspired with Prosecutor James in fabricating evidence—i.e., deleting portions of Petitioner's interview—and that Prosecutor Ours took Ms. Hartman's deposition under false pretenses. That conduct, Petitioner argues, removes him from the protections of absolute prosecutorial immunity.

Notably, Prosecutor Ours was not appointed as special prosecutor until after charges were filed, that is, after the magistrate (who is not alleged to have participated in this purported conspiracy) made a probable cause determination. So, Prosecutor Ours was not present for any of the "investigatory" stages of the prosecution. His conduct, as alleged

---

[15] We note that while this Court has discussed the availability of qualified immunity to prosecutors who act in an investigative, rather than a prosecutorial capacity, the circuit court did not perform a qualified immunity analysis, and, insofar as we agree that the functions performed by Prosecutors James and Ours were prosecutorial in nature, we do not discuss qualified immunity, either.

by Mr. Launi as outside the realm of his prosecutorial function, is that he *continued* a prosecution in bad faith.

In concluding that Prosecutor Ours was entitled to absolute immunity, the circuit court relied on the reasoning of the United States Court of Appeals for the Fourth Circuit in *Springmen v. Williams*.[16] There, the prosecutor did not sign the charging documents, but was entitled to absolute immunity for her decision to initiate a criminal prosecution.[17] The *Springmen* court held that whether and when to prosecute is clearly a prosecutorial function for which she was afforded absolute immunity, finding "[i]t is difficult to imagine conduct more intimately related to the judicial process than a prosecutor's decision to proceed with a prosecution."[18]

We agree with the rationale from *Springmen*. It is consistent with this Court's discussion in *Mooney* that "initiating and pursuing a criminal prosecution, [and] presenting a case at trial . . . is intricately associated with the judicial process."[19] We find no error in the circuit court's conclusion that Prosecutor Ours, in continuing the prosecution of Mr. Launi, was acting in his prosecutorial capacity. The answer is no different in light

---

[16] 122 F.3d.211 (4th Cir. 1997).

[17] *Id.* at 213.

[18] *Id.*

[19] *Mooney,* 225 W. Va. at 370 n.12, 693 S.E.2d at 345 n. 12.

of Mr. Launi's allegations of bad faith and improper motives, because, as we discussed in *Mooney*, absolute immunity protections do not dissolve even if Prosecutor Ours did not pursue the prosecution in good faith.[20]  So, we affirm the circuit court in this respect.

As for Mr. Launi's claim that Prosecutor Ours conspired with Prosecutor James and Cpl. Nazelrod to "fabricate" evidence by deleting portions of the interview, the circuit court held that Prosecutor Ours was entitled to prosecutorial immunity for his actions in not disclosing portions of the interview, because "the decision of whether an item of evidence is disclosable under *Brady v. Maryland* is a prosecutorial function which is afforded absolute immunity."[21]

In so deciding, the circuit court relied on another Fourth Circuit case, *Carter v. Burch*.[22]  There, the court held that the prosecutor was entitled to absolute immunity for his decision to withhold testimonial evidence because the decision to turn over the evidence would have occurred after the petitioner's arrest but before his conviction, so it was clearly

---

[20] *See Mooney*, 225 W. Va. at 370 n.7, 693 S.E.2d at 345 n.7 ("absolute prosecutorial immunity cannot be defeated by showing that the prosecutor acted wrongfully or even maliciously").

[21] *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) (holding that prosecutors must turn exculpatory evidence over to a criminal defendant in time for its effective use at trial).

[22] 34 F.3d 257, 263 (4th Cir. 1994) (holding that prosecutors are absolutely immune for alleged *Brady* violations because the decision of whether to disclose evidence is indisputably a prosecutorial function).

11

part of the presentation of the state's case.[23]  In this case, like *Carter*, the interview of Ms. Hartman was taken after the protective order issued, but before Mr. Launi's acquittal.  So, Prosecutor Ours's decision, if any, to withhold any portion of that interview can only be viewed as part and parcel of presenting the state's case against Petitioner.  Clearly, a prosecutor's presentation of the case at trial is a prosecutorial function that falls under the protective ambit of absolute immunity.  So, we agree with the circuit court's conclusion that Prosecutor Ours's decision to disclose (or not disclose) any portion of the February interview with Petitioner is protected from liability for civil suit by absolute prosecutorial immunity.

Mr. Launi also argues that the circuit court erred in characterizing his claims as *Brady* violations because he is not making Fifth Amendment claims in this suit.  Rather, he is making claims of evidence tampering that go beyond that the evidence was not disclosed.[24]  We do not find this argument persuasive.  In his complaint, Mr. Launi alleges that Prosecutor Ours conspired to delete or suppress thirty-six minutes of the interview.  We agree with the circuit court that Mr. Launi's allegations of deletion or suppression of

---

[23] *Id*. at 263.

[24] Petitioner references *Wearry v. Foster*, 33 F.4th 260 (5th Cir. 2022), cert. denied, 143 S. Ct. 2459, 216 L. Ed. 2d 432 (2023) to support this contention.  We find that the facts from that United States Court of Appeals for the Fifth Circuit case are not applicable to those in this case because there, the prosecutor coerced a juvenile witness into testifying. Here, no allegation of coercion has been made.

portions of the interview are *Brady*-type allegations, however artfully Petitioner phrases them.

Finally, as to Mr. Launi's argument that Prosecutor Ours is not immune for his actions in taking Ms. Hartman's deposition under false pretenses, we find that taking witness depositions in the process of prosecuting a case is a prosecutorial function for which Prosecutor Ours is afforded absolute immunity. As the circuit court did, we note that Rule 15 of the West Virginia Rules of Criminal Procedure is dispositive of this issue. It expressly provides for the taking of depositions in criminal prosecutions. Prosecutor Ours's deposition of Penny Hartman, the complainant, can only be considered conduct that is "intricately associated with the judicial process."[25] We readily conclude that Mr. Launi has alleged no set of facts showing Prosecutor Ours acted in any capacity other than his prosecutorial one, and affirm the circuit court's conclusion that he is absolutely immune from Mr. Launi's claims of malicious prosecution and civil conspiracy claims.

### 2.     *Prosecutor James*

The circuit court also dismissed Mr. Launi's malicious prosecution and civil conspiracy claims against Prosecutor James, concluding those claims were barred by absolute prosecutorial immunity. On appeal, Petitioner argues that Prosecutor James is not entitled to absolute prosecutorial immunity for his actions in interviewing witnesses

---

[25] *Mooney,* 225 W. Va. at 370 n.12, 693 S.E.2d at 345 n.12.

13

associated with the case, directing law enforcement in the course of its investigation, and procuring a prosecution devoid of probable cause because those actions were investigative in nature and thus outside the scope of his function as a prosecutor.

Specifically, Mr. Launi disputes that Prosecutor James had any prosecutorial duties here because, as the prosecutor for Hampshire County, he had no role as a "prosecutor" in the Mineral County prosecution, and, for that reason, cannot avail himself of prosecutorial immunity. Mr. Launi further contends that Prosecutor James engaged in investigative functions when he directed Cpl. Nazelrod to Ms. Hartman's report of domestic abuse, revoked Ms. Hartman's bond for a prior DUI charge after she was charged with telephone harassment, spoke with the press regarding the charges against Petitioner,[26] and involved himself in a conspiracy to suppress portions of the February interview from Mr. Launi. Mr. Launi then relies on federal authority to argue that absolute immunity should only apply to "actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct."[27]

---

[26] The circuit court determined that Petitioner's claim that Prosecutor James spoke with the press falls outside the scope of prosecutorial immunity and supports his allegation of intentional infliction of emotional distress, and not any allegation of malicious prosecution or civil conspiracy. So, we do not disturb the circuit court's finding on this matter and need not address any allegations regarding defamatory statements.

[27] *Burns v. Reed*, 500 U.S. 478, 494 (1991).

14

As far as any claim that Respondent James was not entitled to the protections of prosecutorial immunity because he was Prosecutor of Hampshire County and not Mineral County, this Court has never held that a prosecutor's geographic location is determinative for immunity. Importantly, Mr. Launi's argument in this respect ignores that while Prosecutor James was not involved in prosecuting him for domestic violence against Ms. Hartman, he *was*, at that same time, seeking to revoke Ms. Hartman's bond based on her harassment of Mr. Launi. We reiterate that whether a prosecutor is entitled to absolute immunity is a functional analysis; prosecutors are immune when taking actions in a prosecutorial capacity. We turn, then, to the conduct alleged and perform that functional analysis.

In *Buckley v. Fitzsimmons*, the Supreme Court of the United States held that prosecutorial immunity includes not just actions taken within the courtroom, but also "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." [28] But, the court in *Buckley* drew a distinction between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend a suspect be arrested, on the other."[29] Upon receiving Ms.

---

[28] 509 U.S. 259, 272 (1993).

[29] *Id.* at 273-74.

15

Hartman's complaint, Prosecutor James merely referred the complaint to Cpl. Nazelrod with the State Police, which had jurisdiction to investigate it, and informed them that there was sufficient evidence to pursue charges. Even taking the allegations in the light most favorable to Mr. Launi, Prosecutor James conducted no independent investigation of the domestic violence Ms. Hartman alleged, and, contrary to Mr. Launi's assertions, was not performing any functions that are typically reserved for police officers or detectives in referring the complaint and giving his professional opinion about the sufficiency of the evidence. We agree with the circuit court that those functions are consonant with Prosecutor James's role as an officer of the court despite that no prosecution had yet begun.

Likewise, Prosecutor James's decision to file a petition to revoke Ms. Hartman's bond was nothing other than an exercise of prosecutorial discretion, since it is a prosecutor's duty to weigh the evidence in determining whether to pursue a bond revocation. Mr. Launi's contention that Prosecutor James interviewed witnesses associated with the case and outside of his prosecutorial capacity is also infirm to defeat application of prosecutorial immunity because it overlooks that Prosecutor James was actively seeking to revoke Ms. Hartman's bond based on her harassment of Mr. Launi. By virtue of the overlap in allegations and witnesses, Prosecutor James acted consistently with a prosecutor's role in interviewing witnesses to prepare his own case. And, as we have already determined in relation to Prosecutor Ours, the disclosure of evidence is

16

indisputably a prosecutorial function entitled to absolute immunity, even if it was done in bad faith.[30]

As alleged, Prosecutor James's actions, even if proven, in referring the domestic assault case to the appropriate authorities, interviewing witnesses, revoking Ms. Hartman's bond, and excluding evidence all constitute prosecutorial functions. And, as we explained above, because Petitioner's complaint alleges malicious prosecution and civil conspiracy based on those prosecutorial functions, the circuit court appropriately dismissed those claims.[31]

### B.    Claims against Cpl. Nazelrod

Though Cpl. Nazelrod is not entitled to prosecutorial immunity, the circuit court concluded that Petitioner's claims against him for malicious prosecution, civil conspiracy, and abuse of process fail on their merits. Examining each cause of action pleaded by Mr. Launi, we agree for the reasons explained below.

---

[30] And, even if Prosecutor James did not have jurisdiction over the prosecution, we reiterate that the immunity analysis is functional and does not consider geographic location.

[31] We note that the circuit court also analyzed Petitioner's malicious prosecution and civil conspiracy claims against Prosecutors James and Ours. Because we hold that any claims for civil liability against the Prosecutor Respondents are barred by prosecutorial immunity, we need not discuss whether Petitioner can succeed on the merits of those claims.

### 1.    Malicious Prosecution

Mr. Launi argues that the circuit court erred in finding that his claims for malicious prosecution must fail because there was a probable cause determination. We have held that,

> "[i]n an action for malicious prosecution, plaintiff must show: (1) that the prosecution was set on foot and conducted to its termination, resulting in plaintiff's discharge; (2) that it was caused or procured by defendant; (3) that it was without probable cause; and (4) that it was malicious. If plaintiff fails to prove any of these, he cannot recover." Radochio v. Katzen, 92 W.Va. 340, Pt. 1 Syl. [114 S.E. 746, (1922) ]." Syl. pt. 3, *Truman v. Fidelity & Casualty Co. of New York*, 146 W.Va. 707, 123 S.E.2d 59 (1961). [32]

The third element, that the prosecution was undertaken without probable cause, is determinative here.[33]

We begin with the presumption that probable cause underlies every criminal prosecution:

> The public policy favors prosecution for crimes and requires the protection of a person who in good faith and upon reasonable grounds institutes proceedings upon a criminal charge. The legal presumption is that every prosecution for

---

[32] Syl. Pt. 2. *Norfolk S. Ry. Co. v. Higginbotham*, 228 W. Va. 522, 721 S.E. 2d 541 (2011).

[33] *See Bailey v. Gollehon*, 76 W. Va. 322, 85 S.E. 556 (1915) (holding that a claim for malicious prosecution cannot lie where probable cause exists).

18

crime is founded upon probable cause and is instituted for the purpose of justice.[34]

To overcome that presumption, Mr. Launi argues that his complaint alleges that Cpl. Nazelrod conspired with Prosecutors James and Ours to procure a prosecution devoid of probable cause, and that the complaint before the magistrate signed by Cpl. Nazelrod omitted material facts. Those omissions, he claims, evince a lack of probable cause. Mr. Launi further argues that this Court has previously held that prima facie evidence for existence of probable cause only attached when a grand jury issues an indictment.[35] Because there was no grand jury finding of probable cause, he argues that this Court should not presume that there was probable cause here.

This latter argument mischaracterizes our case law. Although we have held that prima facie evidence for the existence of probable cause does attach when a grand jury issues an indictment, we have never held that this is the *only* method for a reviewing court

---

[34] Syl. Pt. 4, *McNair v. Erwin*, 84 W. Va. 250, 99 S.E. 454 (1919).

[35] *See* Syl. Pt. 5, *Jarvis v. West Virginia State Police*, 227 W. Va. 472, 711 S.E. 2d 542 (2010) (In a claim for retaliatory prosecution in which a plaintiff alleges that he or she was criminally prosecuted in retaliation for exercising a right protected by the state or federal constitution, a grand jury indictment is prima facie evidence of probable cause for the underlying criminal prosecution, and a plaintiff may rebut this evidence by showing that the indictment was procured by fraud, perjury, or falsified evidence.').

19

to make a determination on whether a probable cause finding was made. And, here, probable cause was established despite that there was no grand jury finding to that effect.

First, a magistrate found probable cause to issue an arrest warrant for petitioner. Under Rule 4 of the West Virginia Rules of Criminal Procedure, an arrest warrant issues upon a finding of probable cause.[36] Mr. Launi maintains this is not dispositive as that magistrate was presented with a complaint that omitted material facts. Even so, the magistrate presiding over the case was aware of Petitioner's allegations that the complaint omitted material facts,[37] and still denied Petitioner's motion for judgment of acquittal, finding that the state had produced enough evidence of the crimes charged, such that the jury should be permitted to determine Petitioner's guilt or innocence. Implicit in that denial of the motion of judgment of acquittal is a finding of probable cause. That the jury later acquitted Petitioner is not indicative that the state lacked probable cause to prosecute.[38] The facts here, as alleged, cannot establish a lack of probable cause that

---

[36] *See* R. Crim. P. for Magis. Cts. Of W. Va. 4 ("If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue to any officer authorized by law to execute it.")

[37] Mr. Launi moved for a judgment of acquittal based on the state's alleged suppression of evidence at trial.

[38] This is particularly evident because when the State presented its case, Ms. Hartman recanted her prior statements to law enforcement.

would support a malicious prosecution claim. So, we hold that the circuit court did not err in dismissing the claim against Cpl. Nazelrod for malicious prosecution.

### 2. Abuse of Process

Petitioner also challenges the circuit court's decision to grant Cpl. Nazelrod's motion to dismiss on the abuse of process claim. To establish abuse of process in West Virginia, the Petitioner must show that Cpl. Nazelrod engaged in "the willful or malicious misuse or misapplication of [a] lawfully issued process to accomplish some purpose not intended or warranted by that process."[39] Further, this Court has held that in order to establish a claim for abuse of process "there must be … an intentional and willful perversion" of lawful process resulting in an "unlawful injury of another."[40]

Petitioner alleges that "by seeking a DVPO on behalf of Penny Hartman … and by other acts as set forth in the allegations of fact above, [Cpl. Nazelrod] engaged in a willing and knowing misapplication of lawfully issued process for a purpose not intended or warranted by that process." Taken with the factual allegations in the remainder of his complaint, Mr. Launi argues that by participating in a prosecution he believes was unfounded and by instructing Penny Hartman to seek a domestic violence protective order

---

[39] *Wayne Cnty. Bank v. Hodges*, 175 W. Va. 723, 726, 338 S.E. 2d 202, 205 (1985).

[40] *Williamson v. Harden*, 214 W. Va. 77, 80, 585 S.E. 2d 369, 372 (2003).

21

for the purpose of harassing him, Cpl. Nazelrod misused and misapplied lawful process to accomplish a purpose not intended by that process under *Hodges*. Stated differently, Mr. Launi's abuse of process claim is grounded in the allegation that Cpl. Nazelrod's investigation was ill-intended and that he veered outside of lawful process in pursuing the domestic violence charges against him.

We disagree and find that Mr. Launi's allegations, even if true, cannot make out a claim for abuse of process because we have held that "there is no liability [for abuse of process] where the defendant has done nothing more than carry out [a lawful] process to its authorized conclusion."[41] It is not alleged that Cpl. Nazelrod, in conducting his investigation that led him to compile evidence against and file the complaint against Mr. Launi, committed any act outside lawful process. Rather, he followed standard practices for law enforcement officers in domestic violence cases: he informed Ms. Hartman of her right to file for a protective order, he contacted the magistrate to inform him that Ms. Hartman was interested in filing for a protective order, and he served Ms. Hartman with a subpoena. As the circuit court concluded, "even if [Cpl. Nazelrod] had bad intentions, he did nothing more than use standard process to its natural conclusion."

It is clear that Mr. Launi has alleged no set of facts in support of his claim for abuse of process that could support a claim against Cpl. Nazelrod for abuse of process

---

[41] *Preiser v. McQueen*, 177 W. Va. at 279 n.8, 352 S.E.2d at 28 n.8.

22

where the allegations establish that Cpl. Nazelrod followed the standard procedures when addressing a domestic violence complaint. So, we find that the circuit court did not err in dismissing Mr. Launi's claim for abuse of process.

### 3. *Civil Conspiracy*

Finally, Mr. Launi argues that the circuit court erred in dismissing his claims of civil conspiracy against Cpl. Nazelrod because, first, "to the extent this Court agrees with Petitioner's arguments [as to malicious prosecution and abuse of process], the circuit court's finding on this point should also be reversed," and second, "there are other allegations of civil conspiracy which are not dependent on a finding by this Court as to the sufficiency of Petitioner's malicious prosecution and abuse of process claims." To substantiate this second argument, he asserts that his complaint contains other allegations of unlawful conduct having to do with Cpl. Nazlrod's tampering and destruction of evidence.

Because we find that the circuit court did not err in dismissing Petitioner's claims against Prosecutors Ours and James, we also affirm the circuit court's dismissal of his civil conspiracy claim against Cpl. Nazelrod. We find no merit in Petitioner's argument that the claim for conspiracy somehow goes beyond his claims for malicious prosecution and abuse of process. Not only is this argument newly raised on appeal, it lacks support in

23

the complaint itself, in which Petitioner bases the conspiracy claim on the same allegations as malicious prosecution.

## IV.  CONCLUSION

For the reasons discussed above, we affirm the August 12, 2020 orders of the circuit court of Mineral County.

Affirmed.

24